THE PEOPLE ex rel. JACOB A. HATZEL et·al., Appellants, *v.* GEORGE HALL, Respondent.

The jurisdiction and power of the courts was not affected by the provision of the Code of Procedure (§ 428),* abolishing the writ of *quo warranto* and proceedings by information in the nature thereof; it is only the form of the proceeding that was done away with. The remedies theretofore had in those forms may now be obtained by civil action.

As to whether the jurisdiction of the courts in those matters can be affected by legislation, *quære*.

The provision of the charter of the city of New York of 1873 (§ 6, chap. 335, Laws of 1873), making the board of aldermen "the judge of the election, returns and qualifications of its own members, subject, however, to the review of any court of competent jurisdiction," did not oust the courts of jurisdiction, or prevent them from originating an inquiry as to the right to that office. (CHURCH, Ch. J., dissenting.)

The provision simply creates a cumulative jurisdiction, by the exercise of which the board is for the time constituted a legal body and its acts are made authoritative, leaving to courts of competent jurisdiction the right to inquire in behalf of the people, into the right of any person who, by action of the board, holds a place in it. (CHURCH, Ch. J., dissenting.)

The rule that where a new right or the means of acquiring it is conferred, and an adequate remedy for its invasion given by the same statute, parties injured are confined to the statutory redress, does not apply in such case, as against the people, as the right to inquire is not given by the charter, nor is a remedy given to the people by it.

*State* v. *Marlow* (15 Ohio St., 114); *Comm.* v. *Leach* (44 Penn., 332); *State* v. *Com. Council of Rahway* (33 N. J. L. R., 111); *McVeany* v. *The Mayor* (1 Hun, 35), distinguished.

The distinction between the occasions and· the effect of the use of such provisions in a legislative enactment conferring power upon the councils of municipalities or other inferior tribunals, and their use in the Constitution of the United States (art. 1, § 5, sub. 1), and of this State (art. 3, § 10), conferring power upon the houses of the Legislature pointed out.

Inasmuch, however, as the said provision does give judicial power to the board of aldermen, where a person claiming to be a member of said board has instituted a proceeding before it, wherein it has been adjudged that he has not, and that, as against him, another has the right to the office, such an adjudication until reversed is conclusive as to him; and is a bar to an action brought by him to test his claim, although it is not a bar as against the people.

(Argued January 21, 1880; decided February 24, 1880.)

---

* See § 1983 of Code of Civil Procedure.

APPEAL from a judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor, of the defendant, entered upon an order nonsuiting the plaintiffs on trial.

This action was in the nature of a *quo warranto*, to try the title to the office of alderman in the city of New York.

The complaint alleged in substance that on the 5th day of November, 1878, an election was duly held in the city of New York for three aldermen, to fill that office for the sixth Senate district in said city; that at said election the relator, the defendant, one Bernard Kenney, and one Joseph P. Strack, were candidates for election to said office; that the said Bernard Kenney received 12,608 votes; said Strack 12,415, said defendant received 8,965 votes, and relator received 8,993 legal votes for said office; that subsequently and on or about the 6th day of January, 1879, the relator presented his petition for and demanded a seat in the board of aldermen of the city of New York; that such proceedings were had in and by said board, that on or about the 20th day of May, 1879, the said board resolved and declared that said defendant was entitled to a seat in said board, and that the relator was not so entitled; that on the 1st day of January, 1879, the said defendant usurped the said office, and has ever since usurped and withheld the same from said plaintiff.

The defendant set up in his answer the proceedings of the board of aldermen upon the conflicting claims of relator and defendant, and the adjudication therein in favor of the defendant, which he claimed was a bar to this action.

Upon the opening of the case on trial, defendant's counsel moved for a dismissal of the complaint upon the pleadings, which motion was granted. Plaintiff's counsel duly excepted.

*L. C. Waehner*, for the relator. By the Code the writ of *quo warranto* is abolished, and a remedy by action given. (*People ex rel. Judson* v. *Thatcher*, 55 N. Y., 528,.

529; Code, § 432.) When superior courts have jurisdiction, it can only be taken from them by express words of statute or by necessary implication. (4 T. R., 109; 3 Greene [Iowa], 42; 8 Pick., 435; 1 U. S. Dig., 630.) It was error to hold that under the provision of the charter of 1857 the action of the board would have been judicial and conclusive; judicial it would be, but not conclusive and final. (*State* v. *Fitzgerald*, 44 Mo., 425; *State* v. *Funck*, 17 Iowa, 365; *Wammack* v. *Wammack*, 3 Ala., 31; *Ex parte Heath*, 3 Hill, 51; 1 Dil. on Mun. Cor., § 141.) Affirmative words in a statute do not take away the common law or a former statute upon the same subject. (Dwarris, pp. 70, 71, 219; 4 Gilman, 221; 9 Cow., 437; *Jackson* v. *Bradt*, 2 Caines, 169; *R.* v. *Inhab. of Cumberland*, 6 T. R., 194.) The remedy given by the charter of 1857 was simply cumulative to the remedy by *quo warranto*, and therefore did not oust the courts of jurisdiction over nor abrogate that action. (*Griffith* v. *Appaice*, Cr. Eliz., 104; *Rex* v. *Robinson*, 2 Burr, 800; *Coles* v. *Knight*, 3 T. R., 442; *Att'y-Gen.* v. *Cor. of Pool*, 4 Mylne & Cr., 17; *Parr* v. *Att'y-Gen.*, 8 Cl. & F., 409; 23 Wend., 222.)

No one appeared at the bar as counsel for the respondent. His attorney, A. H. Purdy, by letter, informed the court that he relied upon the printed points of the defendant in the analogous case of *The People ex rel.* v. *Perley*, argued shortly before this case.[*]

Folger, J. Though the ancient writ of *quo warranto*, and proceedings by information in the nature thereof, are abolished (Code of Proc., § 428), yet the remedies heretofore had in the forms of that writ and that information, may now be obtained by civil action. (Code of Proc., § 428; *People ex rel.* v. *Thatcher*, 55 N. Y., 528, 529.) It is only the form of the proceeding that is done away with. The jurisdiction and power of the courts are not touched by that section, even

* See Mem., *post*, p. ▤.

120   People ex rel. Hatzel et al. v. Hall.   [Feb.,

Opinion of the Court, per Folger, J.

if they could be by legislation ; nor the right to seek and reach through them all the remedy which that writ or information once afforded.

In this action, in the nature of a proceeding by *quo war-ranto*, the People of the State of New York ask of George Hall, the defendant, by what right he exercises and claims to hold the office of alderman of the city of New York. The defendant does not set up any primary right by which he claims, but rests alone upon the fact, that the board of aldermen of that city, having acquired jurisdiction so to do, have duly adjudged that he was duly elected a member thereof ; and he sets up that as a bar to this action. The position of the defendant, as stated in argument, is, that the board of aldermen has, in the first instance, the sole and exclusive jurisdiction of such a question, and that a determination by it is final and conclusive, unless there be had a review of its action by a proceeding bringing that action itself into the courts.

Doubtless the board of aldermen has jurisdiction to sit in judgment upon the right to a place in its body. The charter of the city enacts, that the board " shall be the judge of the elections, returns and qualifications of its own members, subject, however, to the review of any court of competent jurisdiction." (Chap. 335, Laws of 1873, § 6.) This clause gives power to adjudge ; but does it give exclusive power in the first instance ? Are the courts of the State thereby ousted of jurisdiction, and shut out from originating an inquiry as to the right to that office ? The defendant maintains the affirmative. His claim is put upon the likeness of this clause in the charter, to those in the Constitution of the United States and in that of this State, and the effect that, it is said, is given to them as *per se* conferring sole and exclusive power upon the houses of Congress and the houses of the State Legislature. The clause in the charter and the clauses in the constitutions are in the same form of words : " Each house shall be the judge of the elections, returns and qualifications of its own members   *   *   *   ." (U. S. Const., art 1, § 5,

sub. 1.) "Each house shall   *   *   *   be the judge of the elections, returns and qualifications of its own members *   *   *   ." (Const. of N. Y., art. 3, § 10.)

It is conceded by the text writers, that each of those houses has the sole power to judge thereof, exclusive of every other tribunal: (1 Kent, *235; 1 Story on Const., § 833; Cushing Law & Pr. Leg. Ass., § 1050; Cooley Cons. Lim., *133.) It is doubtful, however, whether they reach that conclusion, alone from the form and inherent force of the words used in the constitution. Kent (*supra*) says: "There is no other body known to the constitution, to which such a power might be safely trusted." Story (*supra*) says: "If lodged in any other, than the legislative body itself, its independence, its purity, and even its existence and action may be destroyed or put into imminent danger.   *   *   *   Accordingly, the power has always been lodged in the legislative body by the uniform practice of England and America." Kent (*ubi supra*) says that the same power is vested in the British House of Commons. There, it "has its original from this one maxim, ' that whatever matter arises concerning either house of parliament ought to be examined, discussed and adjudged in that house to which it relates and not elsewhere:'" (1 Bl. Com., *163, citing 4 Inst., 15.) The power seems to have been established in the House of Commons, after a conflict. It was claimed and exercised at one time by the king and council, at another by the House of Lords, and again by the chancellor: (See Cox's Inst. of Eng. Govt., 117; May's Law of Parliament, 54; Hallam's Cont. Hist. Eng., vol. 1, 273)*a*. In 1624, the Commons declared by resolution, that it belonged exclusively to the house itself, as "its ancient, natural and undoubted privilege;" and since then the claim of the house seems to have been acquiesced in on all hands: (Cush. Law & Pr., 54.) The same author says, that the power is so essential to the free election and independent existence of a legislative assembly, that it may be regarded as a necessary inci-

---

*a* These citations are furnished by the interesting brief of Mr. Stetson, counsel for the respondent, in *Mc Veany's Case*, argued soon after this.—F.

122     People ex rel. Hatzel et al. v. Hall.     [Feb.,

Opinion of the Court, per Folger, J.

dent to every body of that description *which emantes directly from the people;* and that the constitutional provisions are out of abundant caution : (Cush. Law & Pr., 54; and see Hammond's Pol. Hist., c. 3.) So that it seems, that force is added to the words of the constitution, by a consideration of the occasions and the instruments in which they are found, and of the character of the political bodies to which they are applied ; and a greater weight is given to them, than they will bear in a legislative act, passed in view of constitutional provisions creating courts of justice and clothing them with general jurisdiction.

It is apparent that there is a wide difference, in the occasions of the use of these phrases, in conferring power upon the highest legislative bodies, and upon the councils of municipalities, or other inferior tribunals. As to the legislatures, they are used when the People, the sovereignty, has come together by its delegates to organize a government ; and to parcel out the three great powers thereof, the legislative, the executive, and the judicial, among the three co-ordinate and principal depositaries to which they are committed. Though the constitution confers upon specified courts general judicial power, there are certain powers of a judicial nature which, by the express terms of the same instrument, are given to the legislative body, and among them this which we are considering. All powers are then in the hold of the People. They are about to distribute these powers among the bodies which they at the same time create. When it is said, on such occasion, to either house of the Legislature, " You are to be the judge of the election of the members to your body," there is a specific conferment of this particular power ; and when it is said, at the same time, to the judicial body, " You are to have general jurisdiction in law and equity," though the conferment of power is general, there is, by the force of the concurrent action, excepted from the general grant, the specific authority definitely bestowed with the same breath upon another body. In such case it may well be, that a form of words in the instrument, that clearly

makes a gift of judicial power to one co-ordinate body, should be construed as reserving the particular power thus bestowed, from the general conferment of judicial power by the same instrument, at the same time, upon another co-ordinate body. The power thus given to the houses of the Legislature is a judicial power, and each house acts in a judicial capacity when it exerts it. The express vesting of the judicial power, in a particular case so closely and vitally affecting the body to whom that power is given, takes it out of the general judicial power, which is at the same time, in pursuance of a general plan that has regard in each part to every other part, bestowed upon another body ; both bodies being cotemporaneous in origin, and equal in dignity, degree and proposed duration.

None of these things apply to the council of a city. It is the creature of the Legislature. It has not the inherent powers of one of the constitutional depositaries of authority. It is from the outstart a body inferior to the judiciary, and, as a general rule, answerable unto it. It is not unsafe for it, nor is it inconvenient, that a power to determine of the membership to it should be given to the courts. It is not to be feared that it will be destroyed, or its existence be endangered, by the judicial exertion of that power. It is made by temporary and changeable statute, instead of fundamental and permanent law. The authority that created it, the Legislature, remains, and may interpose to ward it from harm, or may bring it back to life if harmed fatally.

The argument, therefore, may not prevail, that is drawn from the use of the same form of words in the charter that is found in the constitutions.

But it is further urged that the clause in the charter — taken without regard to that likeness — gives exclusive power in the first instance to the board. It does not, unless it takes away jurisdiction from the courts ; or, in this case, from the Supreme Court of the State. That court, from its origin, has had general jurisdiction in law and equity : (Const., art. 6, § 6.) Within that jurisdiction formerly fell the proceed-

ings by *quo warranto,* and by information in the nature thereof; and now falls the action by which the remedies once got by them are yet reached. That jurisdiction is not taken away by a statute, unless there be express words in it to take it away. "It is a maxim in the common law, that a statute made in the affirmative, without any negative expressed or implied, doth not take away the common law:" (1 Coke [2d Inst.], 199, cap 20–24; *Rex* v. *Moreley*, 2 Burr, 1040; and see Per COWEN, J., *In re Heath*, 3 Hill, 52; *The People* v. *Dirs. B. and R. T. Road*, 23 Wend., 222.) That rule applies here. There is no word in the clause in the charter that, either in terms or by necessary implication, expresses a legislative purpose to take from the Supreme Court its jurisdiction, and to make the power of the board exclusive, and its judgment final and conclusive. It creates a cumulative jurisdiction; it enables the board to pass speedily and by simple proceeding upon the right to membership in it, so that it may not be hampered in the performance of its functions; and when it has done so, the board, as composed thereby, is for the time a legal body and its doings authoritative. The courts of competent jurisdiction are not shut out, however, from inquiring in behalf of the people, the origin of all authority, into the right of any person who, by the action of the board, in fact holds a place in it, and claims thereby to exercise a public office. The officer is such as to be liable to such an inquiry in behalf of the public, and it needs express and unequivocal words, or an irresistible implication, to take away from the judiciary a jurisdiction always possessed. The Supreme Court has by its constitution control over all inferior jurisdictions, of which the board of aldermen is one. To take away its general superintending power, the language to that end should be clear and unequivocal, and not to be collected from doubtful inferences or incomplete analogies.

It is suggested that the phrase, "subject, however, to the review of any court of competent jurisdiction," found in the clause in the charter, gives an implication that, in the legis-

lative purview, the words giving power would, without some restrictive phrase, have conferred sole, exclusive and final jurisdiction. It is not to be so construed. The most that can be implied therefrom, is, that the law-maker apprehended that the judgment of the board might be considered final, so far as that proceeding had by it was concerned, unless it was declared otherwise. So there was provided in express terms that that proceeding should be subject to review. It may be doubted if this was needful, and whether it was not already the law that it should be so subject. Wherever a new jurisdiction is erected, whether by public or private act, it is subject to inspection by the proper court, by writ of error, *certiorari* or *mandamus :* (*Lawton* v. *Com'rs*, 2 Cai., 181.) The phrase, from abundant caution, but declared the existing law.

Sometimes, in opposition to the views we take, a reliance is had upon the rule, that where a new right, or the means of acquiring it, is conferred, and an adequate remedy for its invasion given by the same statute, parties injured are confined to the statutory redress : (*Dudley* v. *Mayhew*, 3 Comst., 9.) This rule cannot apply to The People, who are plaintiffs in this case. The right to inquire was not given by this charter, nor is a remedy given to The People by it. Whether the rule will affect the relator need not be determined, as will be seen hereafter. There are decisions in other States which hold in accordance with the views herein expressed : (*State* v. *Fitzgerald*, 44 Mo., 425; *Hummer* v. *Hummer*, 3 Greene [Iowa], 42; *Wammack* v. *Holloway*, 2 Ala. [N. S.], 31; *Murfree* v. *Leeper*, 1 Overton [Tenn.], 1; *Burginhofen* v. *Martin*, 3 Yeates, 479; 2 Rawle, 369, *infra.*) Cases are cited from other States as being opposed. We think that the decisions in them are put upon the requirements of the constitutions of those States, as in *State* v. *Marlow* (15 Ohio St., 114 [see pages of opinion 133, 134, 135] ) ; or upon positive and unequivocal expressions in statutes, as in *Comm.* v. *Leach* (44 Penn., 332), the decision in which seems to have gone upon or been influenced by a

statute, enacting that where a remedy is provided by any act of Assembly, the direction thereof shall be strictly pursued, and nothing done agreeable to the provisions of the common law, further than shall be necessary for carrying such act into effect: (Purdon's Dig. [Brightly], 41; see 15 Ohio St., *supra*, 130.) 44 Penn. St., *supra*, did not profess to overrule or question *Com.* v. *McCloskey* (2 Rawle, 369), where it was held (by a divided court, however,) that an act making commissioners judges of the election to their body, and giving them full power and authority, did not oust the superintending jurisdiction of the Supreme Court, to be exerted by *quo warranto* or information. In *State* v. *Com. Council of Rahway* (33 N. J., 111), though there are expressions (p. 114) that "the court is not made the judge of the election," and " the decision has been committed to another jurisdiction," they may well be taken as applying to any action under the particular statute in pursuance of which the proceeding before the court was had, and not as indicating a general conclusion. *McVeany* v. *The Mayor* (1 Hun, 35), is cited. But the judgment in that case was not put upon the ground now in consideration. The expressions in the opinion, touching upon the question, fall far short of a deliberate utterance that the courts are without jurisdiction in such case. Moreover, that case is now before us for review.

But there is another view of this case not to be lost sight of. Though the provision in the charter does not oust the Supreme Court of jurisdiction, it does give judicial power in the matter to the board of aldermen : (Per Shaw, Ch. J., *Hiss* v. *Bartlett*, 3 Gray, 472.) It appears from the case that the relator has set that power in motion by a direct proceeding, begun by him in his own behalf, before the board ; and that in that proceeding it has been adjudged that the relator has not, and that, as against the relator, the defendant has the right to the office. This adjudication has never been reversed and is still operative. Is not that adjudication a bar to the relator from proceeding further ? There is no

difference in the application of the rule that a prior judgment is a bar, whether it be in a formal action or in a summary proceeding : (*Suprs. of Onon.* v. *Briggs*, 2 Denio, 33; *Demarest* v. *Darg*, 32 N. Y., 281; *Van Wormer* v. *The Mayor*, 15 Wend., 262.) Though the proceeding be before such a tribunal as that board, it is *res adjudicata* for all that were parties to it : (*State* v. *Deliesseline*, 1 McCord [So. Car.], 52.) The People were not parties or privies. The relator was a party. Besides, in *The Duchess of Kingston's Case*, all the judges were of the opinion that the decision of a question raised between her and Mr. Harvey could not be conclusive between her and the crown : (20 How. St. Tr., 355; *Barrs* v. *Jackson*, 1 Phillips, 582, 586.) The People are not barred by it. They may still inquire by what right the defendant claims the office. The principle stated in *The People ex rel.* v. *Thatcher* (*supra*), applies here. That the sovereign may proceed and inquire, where like movement on the part of a private person will not be entertained because of his own acts ; see *King* v. *Clarke* (1 East, 38), and the cases there cited and quoted from in the argument of counsel for the defendant. And there may be judgment in favor of the People against the defendant of ouster of him, without giving judgment in favor of the relator that he is entitled : (*The People* v. *Phillips*, 1 Denio, 388; see also *Comm.* v. *Sparks*, 6 Whart. *416.) Sometimes a decision or decree with regard to the legal standing or authority of an individual, is like a judgment in an action or proceeding *in rem*, and to an extent binds third persons ; (Co. Lit., 352, *b.*) ; and the reason is given that it renders the person to whom it relates what it pronounces him to be. Hardly can such effect be given to the conclusion of such a board, as against the People. The public right to have it determined in what person the office is legally vested is not to be cut off by acts of the private contestants for it, in which the People had no hand. The case of *The State* v. *Hardie* (1 Iredell's L. R., 42), seems directly in point. The private interest of the relator, so far as he has an interest in the office, is sought in this action, as well as the

public right; but as he has already submitted the determination of his claim to an authorized tribunal which has adjudged against him, and its judgment stands unreversed and unaffected by any review thereof; he is debarred from further pursuit of it. The People are not so placed, and the courts are open to them.

This leads to a reversal, in favor of the People, of the judgment appealed from; and an affirmance of it against the relator.

All concur, except CHURCH, Ch. J., who dissents as to reversal, but agrees as to affirmance.

Judgment in accordance with opinion.