THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH KRULISH, Relator, v. CHARLES V. FORNES and Others, Composing the Board of Aldermen of the City of New York, and PATRICK CHAMBERS, Respondents.

*Canvass of votes for alderman in New York city — powers of the board of aldermen in respect thereto.*

Where the votes cast for the office of alderman in an aldermanic district of the city of New York have been canvassed by the county board of canvassers, in accordance with an order of the Supreme Court directing it to count certain ballots which had been rejected as void, such canvass, when completed, finally determines the question as to what ballots should and what ballots should not be counted for such office, subject to a review by the court, in a proper action brought to determine the title of the candidate declared elected to the office.

When the statement of the canvass of such vote is transmitted to the board of elections of the city of New York and the latter board issues its certificate of election to the person who, on the face of the canvass, is entitled to the certificate, such person's right to the office cannot be questioned by the board of aldermen.

Section 27 of the charter of the city of New York (Laws of 1901, chap. 466), which provides, " the board of aldermen shall determine the rules of its own

proceedings; shall be the judge of the election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction," does not empower the board of aldermen to go behind the election returns and dispute the validity of the election of a person certified to have been elected to that body, but simply authorizes it to determine what persons, according to the returns canvassed by the board of county canvassers and certified by the board of elections, have been properly elected members of the board.

CERTIORARI issued out of the Supreme Court and attested on the 13th day of November, 1902, directed to Charles V. Fornes and others, composing the board of aldermen of the city of New York, requiring them to certify and return to the office of the clerk of the county of New York all and singular their proceedings had in refusing to award to the relator a seat in said board.

*William A. Keener*, for the relator.

*Jacob Marks*, for the respondent Chambers.

*Theodore Connoly*, for the respondents Fornes and others.

INGRAHAM, J.:

The relator and the respondent Chambers were candidates for the office of alderman in the twenty-eighth aldermanic district of the city of New York at the general election held on the 5th day of November, 1901. Upon the return of the vote of this aldermanic district by the inspectors of election it appeared that Chambers received 3,352 votes and that the relator received 3,336 votes, giving Chambers a plurality of 16 votes; that while the board of county canvassers of the county of New York were engaged in the canvass of this vote, the relator made an application to the Special Term of the Supreme Court for a mandamus requiring the board of canvassers to count certain ballots which the inspectors of election had returned as void ballots; that this application resulted in an order requiring the board of canvassers to count certain of the ballots which had been rejected as void, and the board of county canvassers in pursuance of that order canvassed the vote; that upon such canvass it appeared that Chambers received 3,348 votes and the relator received 3,340 votes, giving to Chambers a plurality of 8 votes; that subsequently, on December 18, 1901, the board of elections of the city of

New York, in pursuance of the result of such canvass by the county canvassers, determined, declared and certified that the respondent Chambers was elected as alderman for the twenty-eighth district, and a certificate of election was duly issued to him by the board of elections; that on January 6, 1902, the aldermen who had been declared elected by the board of elections met to organize the board of aldermen, at which time there was duly filed with said board a notice that the election of Chambers as alderman for the twenty-eighth aldermanic district of the city of New York was contested by the relator, who in that notice claimed that he was duly elected for said district; that this contest was referred to the committee on privileges and elections; that subsequently this committee of the board of aldermen having recounted the ballots cast at the election, including those rejected by the county canvassers, a majority of the committee reported that the relator had a plurality of 103 votes over the respondent Chambers, a minority report being in favor of Chambers, and that thereupon a resolution was presented to the board of aldermen to seat the relator as alderman in place of Chambers; that, subsequently, at a meeting of the board of aldermen on November 11, 1902, this resolution was defeated and the minority report was adopted, whereby it was determined that Chambers was elected and entitled to his seat in the board. The relator thereupon obtained a writ of certiorari to review the action of the board in seating Chambers and in refusing to seat the relator.

Section 130 of the Election Law (Laws of 1896, chap. 909, as amd. by Laws of 1901, chap. 208) provides that "the board of supervisors of each county shall be the county board of canvassers of such county. The county board of canvassers of the counties wholly or partly within the city of New York shall be the city board of canvassers of the city of New York within their respective counties." Sections 1 and 2 of chapter 380 of the Laws of 1897 provide that "in every county of the State wholly included within the limits of a city but not comprising the whole of such city, there shall be a board of supervisors to be composed of the members of the municipal assembly, board of aldermen, common council or other legislative body of such city, who shall be elected as such, and also as supervisors within the territorial limits of the

county. * * * Every such board of supervisors may act as a board of county canvassers."

Section 131 of said law, as amended by chapter 379 of the Laws of 1897, provides that the board of county canvassers shall from the original statements of the canvass of the votes by the election officers of each election district, and certified copies thereof when the original statements cannot be produced, proceed to canvass the votes cast in such county at such election. Section 133 of the law provides that " the Supreme Court may, upon affidavit presented by any elector, showing that errors have occurred in any statement or determination made by the state board of canvassers or by any board of county canvassers, or that any such board has failed to act in conformity to law, make an order requiring such board to correct such errors or perform its duty in the manner prescribed by law."

Section 135 of the Election Law, as amended by chapter 379 of the Laws of 1897, provides that upon the completion by a county board of canvassers of their canvass of the votes so cast in such county, they shall make separate statements thereof. " Each such statement shall set forth in words written out at length, all such votes cast for all the candidates for each such office ; and if any such office was to be filled at such election by the electors of a portion only of such county all the votes cast for all the candidates for each office in any such portion of the county, designating by its proper district number or other appropriate designation, the names of each such candidate and the number of votes so cast for each. * * * In the counties wholly or partly within the city of New York, the respective county boards shall make a separate statement of the votes cast for all the city offices voted for by the electors of such city, or any portion thereof within such counties. * * * If, upon such canvass, in any original statement or duly certified copy of an original statement of the result of the canvass of the votes of any election district, there shall be included any ballot indorsed by the inspectors to the effect that it was rejected as void, the county and city boards of canvassers shall add to each statement a statement of the whole number of ballots so indorsed. The statements required by this section shall each be certified as correct over the signatures of the members of the board, or a majority of them, and

shall be filed and recorded in the office of the county clerk of such county. When the whole canvass shall be completed, the original statements of canvass, and certified copies used thereat, shall be filed in the office of the secretary of the board. The certi-fied copies of such original statement of canvass not used at the canvass, and the sealed packages of void  *  *  *  ballots shall be retained in the office in which, or by the officer with whom, they were filed. The sealed packages of void  *  *  *  ballots shall be retained inviolate in the office in which they are filed, subject to the order and examination of a court of competent jurisdiction."

Section 137 of the said law, as amended by chapter 95 of the Laws of 1901, provides that "upon the filing in the office of the county clerk of a county wholly or partly within the city of New York of a statement of the county board of canvassers as to the votes cast for candidates for a city office within such city, such county clerk shall forthwith make a certified copy of each such state-ment and, within five days after the filing thereof in his office, deliver in a sealed envelope such certified copy to the board of elections of the city of New York. On or before the fifteenth day of December in any year in which there shall have been an election for a city office for which votes were cast in a county within the city of New York, the county clerk thereof shall file with the city clerk of such city a certified copy of the official canvass of the votes cast in such county or portion thereof by election districts for such city office, and such canvass by election districts shall, as soon as possible thereafter, be published in the City Record by the city clerk."

Section 138 of said law, as amended by chapter 95 of the Laws of 1901, provides that "the board of elections of the city of New York shall be the board of canvassers of the city of New York of the statements of the county board of canvassers of the counties within such city of the votes cast in such city or any portion thereof for a city office or upon any proposition or question upon which only electors of such city were entitled to vote.  *  *  *  As soon as such board shall have organized the secretary shall deliver to such board the certified copies of the statements of the county boards of canvassers of each county wholly or partly within such city of the votes cast for candidates for city office within such city,  *  *  *

and the said board shall proceed to canvass such statements. * * * Upon the completion of such canvass said board shall make separate tabulated statements signed by the members of such board or a majority thereof, and attested by the secretary, of the whole number of votes cast for all the candidates for each office shown by such certified statements to have been voted for and of the whole number of votes cast for each of such candidates, indicating the number of votes cast in each county for them. * * * Each such statement and determination shall be filed and recorded in the office of the board of elections. * * * Upon the filing in the office of the board of elections of such statements and determination the president of the board of elections shall issue and transmit by mail or otherwise a certificate of election to each person shown thereby to be elected, such certificate to be countersigned by the members of the board of elections of the city of New York under the seal of the city of New York."

There is here provided a complete system for the canvass of the votes in the city of New York for a city office, and ample provision is made for a review by the Supreme Court of any determination of the election officers and the boards of county canvassers in relation to void or rejected ballots, so that the canvass shall be a complete record of the vote actually cast. The determination of the vote actually cast, subject to a review by the Supreme Court, is devolved upon the boards of canvassers, and the board of elections is required to canvass the returns made by the boards of county canvassers, and determine from those returns the persons who are elected to office. Upon the completion of that canvass, the question as to what ballots should or should not be counted is finally determined, subject to a review by the court in a proper action brought to determine the title of an officer declared elected to the office. The vote has been cast and counted by the officers designated in the law as those who are to canvass the vote, and the question determined as to the votes that are to be counted. Upon the transmission of their canvass to the board of elections, that board has to perform the clerical duty of determining from the canvass the persons elected to office within the city of New York, and is required to transmit to the person who appears by that canvass to be elected a certificate of his election. No authority is given in the Election Law

by which that canvass, having once been made and duly certified, can be reviewed, except upon an application to the court to require the county canvassers to recanvass the vote. No other board or officer is given authority to determine whether ballots have been properly or improperly counted upon such canvass. When the canvass of the vote cast for alderman in the twenty-eighth aldermanic district in the city of New·York was completed by the board of county canvassers, and the Supreme Court had determined what ballots should and should not be counted, and in pursuance of that order the canvass has been actually made and transmitted to the board of elections, and that board had canvassed the returns and issued its certificate to Chambers, the respondent here, he became entitled to hold the office to which he had been declared elected, unless his title to that office was questioned in some proceeding authorized by law, and it had been in such proceeding determined that he had not been legally elected to the office.

By section 27 of the charter of the city of New York (Laws of 1901, chap. 466) it is provided that " the board of aldermen shall determine the rules of its own proceedings; shall be the judge of the election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction." Under this provision of the charter it was the duty of the board to determine who, by " the election returns," had been elected, and that determination was subject to review by certiorari; but this provision gave the board no power to go behind the official canvass of the vote of the city of New York made by the boards of county canvassers and subsequently certified by the municipal assembly (now the board of aldermen), as provided for by the Election Law and chapter 380 of the Laws of 1897. The board of aldermen was to judge of the election returns, not of the validity of the election of a member, and if it appeared by the returns which had been filed in the office of the city clerk and the certificate of the board of elections that a person had been duly elected a member of the board of aldermen, it was bound to award to such person a seat in the board. The Constitution of the State gives to each house of the Legislature a power to " judge of the elections, returns and qualifications of its own members." (Const. art. 3, § 10.) Under this power, each house of the Legislature has jurisdiction to determine whether or not a

person who has been duly declared elected a member of that house has been properly elected; but in this provision of the charter the aldermen are not given the power to determine the elections of its members, but a power to judge of the "election returns," and this, I think, clearly limits the power of the board to determine who, from the returns of the election as canvassed by the board of county canvassers and certified to by the board of elections, were properly elected members of the board; and this determination, upon the face of the returns, is subject to review by this writ.

Under the charter of 1873 (Chap. 335, § 6) it was provided that the board of aldermen shall " be the judge of the election returns and qualifications of its own members, subject, however, to the review of any court of competent jurisdiction;" and in *People ex rel. Hatzel* v. *Hall* (80 N. Y. 117), in discussing the question as to whether this phrase in the charter of 1873 gave to the board of aldermen exclusive power to determine as to the election of its members, the court say, in speaking of the provisions of the Constitutions of the United States (Art. 1, § 5, subd. 1) and of the State of New York, " The power thus given to the houses of the Legislature is a judicial power, and each house acts in a judicial capacity when it exerts it. The express vesting of the judicial power, in a particular case so closely and vitally affecting the body to whom that power is given, takes it out of the general judicial power, which is at the same time, in pursuance of a general plan that has regard in each part to every other part, bestowed upon another body; both bodies being cotemporaneous in origin, and equal in dignity, degree and proposed duration. None of these things apply to the council of a city. It is the creature of the Legislature. It has not the inherent powers of one of the constitutional depositaries of authority. It is from the outstart a body inferior to the judiciary, and as a general rule, answerable unto it. It is not unsafe for it, nor is it inconvenient, that a power to determine of the membership to it should be given to the courts." The provisions of the Election Law giving to the courts authority to determine whether ballots improperly rejected by the election officers should be counted, with the language used giving the board of aldermen power to pass only upon the election returns and not

upon the elections, restricted the power of the board of aldermen to a determination from the canvass of the vote as to who was elected ; and the board of aldermen had no inherent power to determine whether or not a member of the board had been elected who, upon the canvass of the votes, had been declared by the county canvassers and the board of elections as duly elected an aldermen, it had power only to determine who had been elected by the returns of the county canvassers.

It follows that the proceeding of the board of aldermen should be affirmed and the writ dismissed, with costs.

VAN BRUNT, P. J., O'BRIEN, MCLAUGHLIN and HATCH, JJ., concurred.

Proceeding affirmed and writ dismissed, with costs.