In the proceeding in quo warranto, the circuit court sustained the demurrer on the ground that the council of the city was the exclusive judge of the election and qualification of its members, and that the council having passed upon the qualifications of the relator, the court was without jurisdiction, and it is said to have based its decision upon The State, ex rel., v. Berry, 47 Ohio St., 232; Stearns v. Village of Wyoming et al., 53 Ohio St., 352; State, ex rel. Shank, v. Gard, 8 C. C., N. S., 599. The case in 47 Ohio State, was a proceeding in quo warranto and arose out. of a contested election, and it was held that the jurisdiction of council was exclusive. The case in 53 Ohio State, was a proceeding in error to review the determination of a city council in the case of *401 a contested election, and it was held that it could not be reviewed on error. In the case in 8 Circuit Court Report, the question turned upon the eligibility of a member of council, and the court found that the member was ineligible if the facts were as they had been found by the city council. In other words, the court found that the ground of ■ ineligibility, as a matter of law, existed and that, therefore, the jurisdiction of council was exclusive.
The weight of authority is to the effect that a constitutional provision that each house shall be the judge of the election and qualification of its members confers upon it exclusive jurisdiction, but that a statutory provision that a city council shall be the judge of the election and qualifications of its members does not, unless it is expressly so provided, make the council the exclusive judge. MechenTs Public Offices and Officers, Section 214; Dillon’s Municipal Corporation, Section 202; State, ex rel., v. Gilmore, 20 Kans., 551; People ex rel. v. Hall, 80 N. Y., 117; State, ex rel., v. Kempf, 69 Wis., 470; State, ex rel., v. Gates, 35 Minn., 385. In People v. Hall, supra, Folger, J., says: “It is apparent that there is a wide difference in the occasions of the use of these phrases, in conferring power upon the highest legislative bodies, and upon the councils of municipalities, or other inferior tribunals. As to the legislatures, they are used when the people — the sovereignty— has come together by its delegates to organize, a government, and to parcel out the three great powers thereof — the legislative, the executive, and the judicial — among the three co-ordinate and *402 principal depositaries to which they are committed. Though the constitution confers upon. specified courts general judicial power, there are certain powers of a judicial nature which, by the express terms of the same instrument, are given to the legislative body, and among them this which we are considering. All powers are, then, in the hold of the people. They are about to distribute these powers among the bodies.which they at the same time create. When it is said on such an occasion to either house of the legislature, 'You are to be the judge of the election of the members of your own body/ there is a specific conferment of this particular power; and when it is said at the same time to the judicial body, 'You are to have general jurisdiction in law and equity/ though the conferment ©f power is general, there is, by the force of the concurrent action, excepted from the general grant the specific authority definitely bestowed with the same breath upon another body. In such case it may well be that a form of words in the instrument that clearly makes a gift of judicial power to one co-ordinate body should be construed as reserving the particular power thus bestowed from the general conferment of judicial power by the same instrument, at the same time, upon another co-ordinate body. The power thus given to the houses of the legislature is a judicial power, and each house acts in a judicial capacity when it exerts it. The express vesting of the judicial power in a particular case so closely and vitally affecting the body to whom that power is given takes it out of the .general judicial power, which is at the same time, in pursuance of a *403 general plan that has regard in each part - for every other part, bestowed upon another body; both bodies being contemporaneous in origin, and equal in dignity, degree, and proposed duration. None of these things apply to the council of a city. It is the creature of the legislature. It has not the inherent powers of one of the constitutional depositaries of authority. It is from the outstart a body inferior to the judiciary, and, as a general rule, is answerable unto it. It is not unsafe for it, nor is it inconvenient, that a power to determine of the membership of it should be given to the courts. It is not to be feared that it will be destroyed, or its existence be endangered, by the judicial exercise of that power. It is made by temporary and changeable statute, instead of. by fundamental and permanent law. The authority that created it, the legislature, remains, and may interpose to ward it from harm, or may bring it back to life if harmed fatally.”
Our statutes do not expressly make council the exclusive judge of the election and qualification of its members, but the statutory provision conferring that power upon council has been treated as analogous to the constitutional provision conferring the power upon the legislature, and the power of a legislature to confer exclusive jurisdiction upon the council is supposed to be derived from the constitutional provision, (Article II, Section 21) that, “The general assembly shall determine, by law, before what authority, and in what manner, the trial of contested elections shall be conducted.” It may be doubted that the constitutional provision was intended to or does apply *404 in municipal elections, but assuming that it does, it makes no reference to qualifications for office. But assuming that the constitutional provision does cover municipal elections and that power to determine a contested election includes power to determine qualifications, it is said by Williams, J., in State, ex rel., v. O’Brien, 47 Ohio St., 464-473, that, “The distinction between the trial of a contested election, which is a contest between two or more persons for the same office, or against one claiming the office, and implies that there was an election held under some lawful authority for choosing an incumbent of an office then in existence, which some one might lawfully fill, and an inquiry into the legal existence of the office, or the authority to hold an election or make an appointment to fill it, is clear and substantial, and was practically enforced in the cases of State, ex rel., v. Marlow, 15 Ohio St., 114, and State, ex rel., v. Taylor, Ibid., 137.
“While, therefore, the power conferred by Section 1679, Revised Statutes, on the councils of municipal corporations, to determine the election of their own members, is exclusive, we are of opinion, qito warranto may be maintained against a person who assumes the exercise of the office of member of the council from a ward which has no lep'al existence, or under an election held without authority of law.”
And so here, we think quo zvqrranto will lie to determine whether the facts, upon which council has determined one of its members or one elected to the office nf councilman, to be disnualified, constitute in law, a ground of disqualification. *405 Council is the exclusive judge of the fact of disqualification, but it can not disqualify excepting on legal ground, and whether the facts found by it constitute such ground is a question of law which may be determined by the courts.
There are numerous provisions in the municipal code giving power to remove or suspend officers, and it is provided that the determination of the officer, or body, on whom the power is conferred shall be final. Section 129 provides, that the directors and officers provided in the act shall, subject to the limitations therein prescribed, have sole power to remove or suspend any such officers, clerks or employes. Section 152 provides that the chief of police and the chief of the fire department shall have exclusive right to suspend in their departments, and that in such cases- the cause shall be certified in writing to the mayor, whose judgment shall be final, and that the mayor shall have the exclusive- right to suspend the chief of the police department or the chief of the fire department, and that he shall certify the fact and the cause .of suspension to the board of public safety, and that its judgment shall be final. Section 183 makes a violation of any of the provisions of the merit system a misdemeanor, and a conviction vacates the office and renders the person convicted incapable of holding any office or place of public employment in the city for a period of five years. Section 186 gives the right of appeal from the decision of the mayor in cases of removal to the board of oublic safety and makes its judgment final. Section 225 makes it the duty of the mayor, when he has reason to believe that any officer has been *406 guilty, in the performance of his official duty, of bribery, misfeasance, malfeasance or non-feasance to file with the council written charges against such officer, and provides for the service of notice and a copy of such charges upon the officer and for a hearing before the council, and that the accused shall have the right to appear in person and by counsel and examine all witnesses and answer all charges against him, and that the judgment or action of council shall be final, provided that it shall require the votes of two-thirds of all members elected to council to* remove such officer. There were similar provisions in the former municipal code, and there are such statutory provisions respecting other officers and boards, and the court has, in numerous cases respecting' them, held, in effect, notwithstanding the statute assumes to confer exclusive power or to make the determination final, that the courts, although they may not judge on the merits, have authority to keep such tribunal, board or officers, within the limits of their jurisdiction, and to compel them to exercise it with regularity. State, ex rel., v. Hawkins, 44 Ohio St., 98; State, ex rel., v. Hoglan, 64 Ohio St., 532; State, ex rel., v. Bryson, 44 Ohio St., 457; State, ex rel., v. McLain, 58 Ohio St., 313; State, ex rel, v. Sullivan, 58 Ohio St., 513.
In the first case, the court said (545), speaking of the power of removal, “The power is one that can not be arbitrarily exercised. It requires charges to be made, supported by such a statement'of facts as hi iudojnent of law constitute the charge made; and an opportunity to the party to *407 be heard. Whilst the court can not pass on the truth of the facts alleged, or interfere with the discretion of the mayor in this regard, it may and will, when appealed to,. pass on the sufficiency of the facts on which the charges are made.”
Do the facts recited in the resolution constitute a disqualification of which the council is made the judge by Section 1536-612, Revised Statutes, which provides that, “Council shall be the judge of the election and qualification of its members.” Section 1536-613,. Revised Statutes, reads as follows: “Councilmen at large shall have resided in their respective cities, and councilmen from wards, shall have resided in their respective wards for at least one year next preceding their election. Every member of council shall be an elector of the city, shall not hold any other public office or employment, except that of notary public or member of the state militia, and shall not be interested in any contract with the city. Any member who shall cease to possess any of the qualifications herein required or shall remove from his ward, if elected from his ward, or from the city, if elected from the city at large, shall forthwith forfeit his office.” The qualifications here prescribed are: 1. Residence in the city and ward for one year next preceding the election. 2. That he shall be an elector of the city. 3. That he shall not hold any other public office or employment, excepting that of notary public, or member of the state militia. 4. That he shall not be interested in any contract with the city. These are “qualifications” within that term in Section 1536-612. But we do not think the acts specified in Section 1536-205 are within that term, in the *408 sense that council may adjudge the fact of disqualification. That section contains this provision: “nor shall any member of the council, board, officer or commissioner of the corporation, have any interest in the expenditure of money on the part of the corporation other than his fixed compensation ; and a violation of any provision of this section shall disqualify the party violating it from holding any office of trust or profit in the corporation, and render him liable to the corporation for all sums of money or other things he may receive contrary to the provisions of this section, and if in office he shall be dismissed therefrom.” Section 1536-989, Revised Statutes, reads as follows: “On complaint under oath, filed with the probate judge of the county in which the corporation, or the larger part thereof, is situated, by any elector of the corporation, signed and approved by four other electors thereof, charging that any member of the council or alderman has received, directly or indirectly, any compensation for his services as councilman, alderman, committeeman, or otherwise, contrary to the provisions of section sixteen hundred and eighty-three or that any alderman, member of the council, or anj' officer of the corporation, is or has been interested, directly or indirectly, in the profits of any contract, job, work, or services, or is or has been acting as commissioner, architect, superintendent, or engineer in any work undertaken or prosecuted by the corporation contrary to the provisions of section sixty-nine hundred and seventy-six, or that any alderman, member of council, or any officer of the corporation has been guilty of misfeasance *409 or malfeasance in office, such probate judge shall forthwith issue a citation to such party, charged in the complaint, for his appearance before him within ten days from the filing of such complaint, and also furnish the accused and city solicitor with a copy thereof: provided, that the probate judge shall require the party complaining to furnish sufficient security for costs before acting upon such complaint.” Section 1536-990, Revised Statutes, provides that the trial shall be by jury, if a jury is demanded by either party, and Section 1536-993, provides that if the charges in the complaint are sustained, the judge shall enter the charges and finding thereon upon the record of the court, and make an order removing such officer from office, and therewith transmit a certified copy of the same to the presiding officer of the council, whereupon the vacancy shall be filled as provided by law; and further provides that if any proceedings in error are instituted by the officer complained of, that he shall not exercise the functions of his office until such order is finally reversed or vacated. In Doll v. State, 45 Ohio St., 445, it is held that a member of the board of public works of the city of Cincinnati is an officer elected to an office of profit or trust within the state within the meaning of Section 6969, Revised Statutes, which makes it a felony for any such person to become directly or indirectly interested in any contract. And Section 6976, Revised Statutes, makes it a misdemeanor for a member of council to be interested in the profits of any contract, job, work or services for the corporation. Section 1536-614, Revised Statutes, provides that *410 council may punish or expel any member for disorderly conduct, or violation of its rules, and declare his seat vacant for absence without valid excuse, where such absence has continued for two months; but no expulsion shall take place without the concurrence of two-thirds of all the members elected, and until the delinquent member shall have been notified of the charge or charges against him, and shall have had an opportunity to be heard. Now, if the humblest appointee is entitled to be heard upon written charges before he can be removed, and if an officer can not be removed until he has had an opportunity to appear in person and by counsel, and to examine witnesses, and then only by a vote of two-thirds of all the members elected to council, and if council can not expel one of its own members for a violation of its rules, excepting by a like vote, and if an officer of the city can not be removed for being interested directly or indirectly in the profits of any contract, job, work or service, excepting by an order of the probate court, and after the verdict of a jury, if a jury trial be demanded, and a similar provision is made for the removal of a member of council for being interested in the profits of any contract, it would seem to be unreasonable to conclude that the legislature intended, by the use of the words, “and a violation of any provision of this section shall disqualify the party violating it from holding any office of trust or profit in the corporation,” in Section 1536-205, Revised Statutes, to confer the power upon the council, by a mere majority of its members, not only to deprive him of the seat to which he had been elected by the city, *411 but also to throw him out with a brand upon him of an act that forever disqualifies him from holding any office in the city.
In State, ex rel., Winsor, v. Mayor and Council, 10 Wash., 4, it is said: “In boards like city councils, where the councilmen are elected by factions and at the behest of special interests, it would be a dangerous power, likely to be subversive of the rights of the people, to allow a majority of the members of a council to expel a member, and this power might frequently be used for the purpose of aiding unworthy movements.” In the case at bar the facts seem to warrant the inference that the president and three members of the council belong to one party and that the remaining four members belong to a different party. The president of council had no vote excepting in case of a tie. The three members conceived the plan to bar the relator from participating in the organization of council by objecting to him on the ground specified, otherwise the four members would be able to elect the clerk and the other officers at the organization. The relator was objected to on the ground that he was disqualified. The president of council held that he had no right to vote upon that question, and the vote being' three to three he declared it a tie and voted with the three who were parties to the plan. The relator’s seat was declared vacant, and upon a vote to elect a member to fill the vacancy, another tie was declared, and the president’s vote, together with that of • the three members referred to, resulted in filling the vacancy with one who would act with them, and they then proceeded to organize *412 the council by the election of a clerk and the other officers. And thus the will of the electors at the election was defeated, for the relator was elected as a member at large, but in the manner stated the will of the electors of the whole city was defeated, and his seat was filled not by the electors, but by the three members of council and the president. In the same case it is held that the causes for which council may expel a member being specified, power to expel is limited to those mentioned, which in the case at bar would limit the power to the causes specified in Section 1536-614, and would exclude the right of removal on the ground specified in the resolution.
This provU’on of the statute that no member of council shall have any interest in the expenditure of monejr on the part of the corporation and that a violation of any provision of the section of which it is a part shall disqualify the party violating it from holding any office of trust or profit in the corporation, is not as clear as it might be. It was first brought into the statute as a 'provision in the so-called Worthington law, Section 2699, Revised Statutes, ( Bates, 3 ed.), the reasons for the enactment of which law are very fully stated in The State, ex rel., v. Hoffman, Auditor, 25 Ohio St., 328. Other kindred provisions in the statutes disqualify on the ground of having an interest in the contract, which it does not seem would be likely to occur without willful or intentional wrongdoing, or at least without the impropriety of his act occurring to the member, but under the present provision we can very readily understand how a member of council might *413 inadvertently, or without it ever occurring to him that his conduct was improper, be guilty of a violation of its provisions. And the policy of the statute, in its broad and indefinite terms, may be questioned. But municipal corporations are merely agencies of the state and the legislature may prescribe the qualifications of their officers and the condition upon which they may remain in office. The incumbents have neither a property interest nor a contract right in them, (Taylor & Marshall v. Beckham, 178 U. S., 548), and the relator - must be presumed to have accepted this office .with a knowledge of this provision of the statute and upon the condition that a violation of it should disqualify him to hold any office in the city.
Reference may be made to a few cases illustrative of the application of similar provisions. Section 19 of an act to amend the charter of the city of New York, passed in 1849, (Laws of N. Y., chapter 187) provides that, “No member of the common council, head of "department, chief of bureau, deputy thereof, or clerk therein, or other officer of the corporation, shall be directly or indirectly interested in any contract, work or business, or sale of any article, the expense, price or consideration of which is paid from the city treasury, or by any assessment levied by any act or ordinance of the common council, nor in the purchase of any real estate or other property belonging to the corporation, or which shall be sold for taxes or assessments.” In Roosevelt v. Draper, 23 N. Y., 318, it is held that the governor of the almshouse is forbidden by this provision to *414 be concerned in the purchase of real estate. In the opinion, 329, Denio, J., says: “There is, of course, a far stronger reason for prohibiting.members of the common council and the commissioners of the sinking fund from being interested in such sales, in which they would have a direct agency by virtue of their offices than for attaching the disability to one filling the position held by the defendant Draper;,but the legislature thought fit to extend it to all corporation officers, including, of course, the governor of the almshouse, and we can not make an exception.” In Smith v. City of Albany, 61 N. Y., 444, it was held, that the plaintiff could not recover for the use of his horses and carriages, hired by a committee of the city council, of which body the plaintiff was a member. And in the opinion it is said, that the act of 1843, (Laws of N. Y., chapter 57) which provides that, “It shall not be lawful for .a member of the common council of any city in this state, or the-trustee of any village, or the supervisor of any town, to be a contractor under any contract authorized by the common council, board of trustees, or board of supervisors of which he is a member, or to be in any manner interested directly or indirectly, either as principal or surety, in such contract,” is but declaratory of the common law. In Nicoll v. Sands et al., 131 N. Y., 19, where the commissioners of highways who signed a contract upon the part of the town were, by its terms, to be paid by the contractor for their services in directing and supervising the laying of pipes, Peckham, J., in the opinion disapproves the practice and says, that while it may not have been prohibited, yet *415 it is of so questionable a nature as to call for the most scrutinizing review of the result by the courts. In Bell v. Quin, 2 Sand. Sup. Ct. Rep., 146, it was held that a recovery could not be had upon a promissory note given for a share of the profits in a contract made with the commissioners of the almshouse of the city of New York for the delivery of coal, for the reason that one member of the firm, the payee of the note, was an assistant alderman. In People; ex rel, v. Mayor of New York City, 5 N. Y. Supp., 538, it was held that the president of the board of health might be removed from office for violation of the provision of a statute that no head of department should become interested directly or indirectly in the purchase of real estate by' the corporation, and that it - was immaterial that the act also contained a provision for the punishment of such offense. In In re Smith, 63 N. Y. Supp., 1018, one of the trustees of a village was removed from his office for the reason that he had furnished work and a team and an engine to the street commissioner on improvements made by the village and had received pay therefor in violation of an act providing that no village officer should be interested in a contract with the village, and it was held that it was no justification that he acted in good faith and received no more on his contract than other contractors received. In Goodrich v. City of Waterville, 88 Me., 39, it is held that a member of the city council can not maintain an action to recover for medical services rendered by his firm to a pauper of the city. In The Village of Dwight v. Palmer, 74 Ill., 295, it was held, under the *416 statute of that state, that the clerk of the board of trustees of an incorporated village could not recover under a contract to publish certain ordinances, though lie had resigned his office before any work was done under the contract. In The City of Ft. Wayne v. Rosenthal, 75 Ind., 156, it is held that an employment by a board of health of a city of one of its members to vaccinate pupils in a public school, is a void contract, and creates no liability against the city.' In McGregor v. City of Logansport, 79 Ind., 166, it is held that the common council of a city can not make a valid contract with the city judge for the use of his office as a city court room. In 'Benton v. Hamilton et al., 110 Ind., 294, it is held that a ^contract between a town treasurer and the town for the improvement by the former of a public street is, under the statute, void as against a property owner assessed on account of the improvement. In McElhinney v. City of Superior, 32 Neb., 744, it is held, that where a city council enters into a contract in which one of its members is interested, for the building of an electric light plant and lighting of the city, the contract may be avoided by the city, and if the contract has not been performed, a taxpayer may maintain an action to enjoin performance of the contract. In Dunlap et al. v. The City, 13 Weekly Notes of Cases, 98, it is held under a statute ¡roverning public contracts in the city of Philadelphia, which provides, “No member or officer of councils, or any department of the city government,, shall be in any way interested in such contracts, directly or indirectly, either at its inception, or during the *417 progress of its fulfillment, or furnish any materials, or supplies, or labor for such contracts,” that the word “interested” does not mean anything but pecuniary interest, and that a bill for stationery furnished to one department of the city was not invalid on the ground that a member of the councils was in the employ of the firm that had furnished the stationery, the member being employed upon a salary that was a Nfixed sum and not dependent on commissions on sales. In Coxe’s. Case, 1 Pa. District Rep., 702, it is held that supervisors of townships had no authority to employ their own teams, or to hire their own minor children to work on the public roads of the township, even though no actual fraud or falsehood is alleged, and it is admitted that the services were honestly rendered for the benefit of the taxpayers. Such course being within the inhibition of a statute that “Nor shall any member of any corporation or public institution, or any officer or agent thereof, be in any wise interested in -any contract for the sale or furnishing of any supplies or materials to be furnished to or for the use of any corporation, municipality or public institution, of which he shall be a member or officer, or for which he shall be an agent.” In Commonwealth, ex rel., v. Hilibish, same report, page 703, it is held, that a councilman is not subject to the penal provisions of that statute on the ground that the superintendent of water works bought several articles at a supply store in which he was a partner, together with two other persons. The purchases were made at the store without any contract or agreement previously made, but in the same manner *418 as any other person would purchase, who would enter a store and buy any small article of merchandise, and the sales were made by the clerk in attendance upon the counter at the time. In Commonwealth v. The Commissioners of Philadelphia County, 2 S. & R., 195, Tilghman, C. J., in considering the effect of a statute upon the right of the county commissioners to purchase chairs from a member of their own board said: “The meaning of the law, where the words are ambiguous, may be best known by considering the mischief which it was intended to prevent. Now, it is certain that it is dangerous to permit a body of men entrusted with the public money to purchase from themselves the articles required for the public service, because men are generally partial to themselves, and therefore, inclined to sell their own goods to the best advantage, but being both buyers and sellers, they could have the game completely in their own hands. One would suppose, therefore, if words will bear it, that the manner of contracts, either for the sale of goods or employment in the public works, were intended to be prohibited.” See also Doll v. The State, 45 Ohio St., 445; Bellaire Goblet Company v. City of Findlay, 5 C. C., 418; Grant v. Brouse et al., 1 N. P., 145 and Marsh v. The Village of Hartwell et al., 2 N. P., 389.
In the relator’s petition in quo warranto he avers: “The plaintiff says that he, during the years 1906 and 1907, was a member of said council of the city of Hamilton, Ohio, and that during said time he accepted orders from the board of public service, delivered shoes thereon *419 and received pay for same as follows;” then follows the orders and vouchers referred to in the resolution. Being of opinion that this was a violation of that provision of the section which provides that a member of council shall not have any interest in the expenditure of money on the part of the corporation and is ground for his removal from his office, and he having admitted the fact, the court will not adjudge that he should be restored to his office, and the defendant being in the office by the votes of those who would have authority to fill the vacancy occasioned by the relator’s removal from the office, the court will in the exercise of its discretion not oust him therefrom.

The judgments are affirmed.

Crew, C. J., Spear, Si-iauck and Price, JJ., concur.