PEOPLE ex rel. ROBINSON v. BURNS et al.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

1. ELECTIONS—CITY COUNCIL AS CANVASSING BOARD—POWER TO DECLARE CANDIDATE INELIGIBLE.

Laws 1896, p. 468, c. 425, tit. 2, § 4 (City Charter of Poughkeepsie), provides that the general election law shall apply to the city election, as well as the canvassing of the votes thereof, and section 5 declares that the common council shall meet after the election, at which meeting a statement of the votes shall be produced by the chamberlain, and shall forthwith determine, declare, and certify who were elected to the various offices. Title 3, § 20, p. 478, gives the common council power to determine the rules of its proceedings, and to judge of the election and qualifications of its members; while section 13 of title 2, p. 469, provides that no person shall be elected an alderman unless at the time of his election he shall be a taxpayer. Held, that the common council acting as a canvassing board, under section 5 of title 2, p. 468, has no power to determine that a person receiving a majority of the votes for alderman is ineligible because not a taxpayer.

2. SAME.

In any event, the council elected at the election in question, and not the council in existence at the time of the election, would alone have power to determine the qualifications of the candidate.

3. SAME—MANDAMUS.—TO WHOM DIRECTED.

Under Laws 1896, p. 478, c. 425, tit. 3, § 20, making the common council of the city of Poughkeepsie the judge of the election and qualifications of its members, and title 2, § 5, p. 468, providing that the common council shall meet on the Friday next after the election, canvass the votes, and certify what persons were elected to the various offices, a writ of mandamus to compel the common council to grant a certificate of election

should be directed to the persons who were members of the council at the time the election was held, and not to their successors in office.

**4. SAME—CONTINUANCE IN OFFICE AS CANVASSING BOARD.**
Under Laws 1896, p. 468, c. 425, tit. 2, § 5, declaring that the common council of the city of Poughkeepsie shall meet on the Friday next after the election, canvass the result thereof, and certify what persons were elected to the various offices, the members of a common council, which, as a canvassing board, has failed to properly certify the result of an election, are still in office as members of the canvassing board for the purpose of performing their legal duties as such, although their terms of office as members of the council have expired.

Appeal from Special Term, Westchester County.

Mandamus by the people, on the relation of Edward T. Robinson against George Burns and others, as aldermen of the city of Poughkeepsie. From an order granting the writ, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., BARTLETT, WOODWARD, JENKS, and MILLER, JJ.

William Morgan Lee, for appellants.
George V. L. Spratt, for respondent.

JENKS, J. Section 4 of title 2 of the charter of the city of Poughkeepsie (chapter 425, p. 468, Laws 1896) in part provides that the provisions of the general election law of the state of New York shall apply to and govern the city election, as well as the canvassing of the votes thereof, and a statement of the result. Section 5 provides that the common council shall meet on the Friday next after such election, at which meeting a statement of the votes shall be produced by the chamberlain, and shall forthwith determine, declare, and certify in the manner provided by law who were elected at said election to the various offices. Accordingly, the common council met on the Friday after election in 1904. Their minutes show that the city chamberlain presented a statement of the votes cast at that election for city and ward officers, from which it appeared that the "following persons had received a majority of the votes cast at such election for the office set opposite their respective names, viz.: George M. Hine for mayor, Charles E. Lane for alderman at large, John Bradley for alderman First Ward, Edward T. Robinson for (short term) alderman First Ward, Benoit Marx for alderman Second Ward," etc. The minutes also read:

"Upon examination of the last assessment roll of the city it appeared that Edward T. Robinson for whom a majority of votes had been cast for alderman of the First Ward for short term, was not at the time of such election a taxpayer in said city, and therefore ineligible as a candidate for such office under the provisions of section 13, title 2 of the charter thereof, whereupon the following resolution was adopted."

Then follow two resolves, of which the first determined, declared, and certified that all of the indivduals who appeared by the said statement as having a majority of the votes, respectively, save Robinson, were duly elected, and the second resolve determined, declared, and certified that Robinson was ineligible as a candidate for the office of alderman in the First Ward by reason of not being a

taxpayer in the city, and that said office is vacant. These proceedings were certified, approved, signed, and filed as the official action pursuant to section 5. The relator demanded a certificate of his election, which was refused. Upon petition verified December 30, 1904, he obtained an order dated December 31, 1904, that the aldermen constituting the common council show cause on January 7, 1905, why a peremptory writ of mandamus should not issue requiring the issue of a certificate of election; and on the return day the writ was ordered.

Section 20 of title 3 of the charter provides:

"The common council shall determine the rules of its proceedings and be judge of the election and qualification of its members."

The board assumed, therefore, that it had the right to determine the eligibility of the relator. Section 13 of title 2 of the charter provided:

"Every person elected or appointed to any office under this act shall be an elector in and a resident of the city; and no person shall be elected or appointed an officer of any ward unless he shall be at the time a resident of such ward, and no person shall be elected an alderman unless at the time of his election, and while he is holding the office, he shall be a taxpayer of said city."

I think that this determination of ineligibility was ultra vires. In the first place, the action was not that of the common council, but of that body as a board of canvassers; and, in the second place, the term of office in question began on January 1, 1905, and the common council which came into existence by virtue of the charter provision on January 1, 1905, was alone empowered to judge of the election and qualification of any member thereof. State v. Trimbell, 12 Wash. 440, 41 Pac. 183. The duties of the common council as canvassers were only ministerial (Matter of Hart, 161 N. Y. 507, 55 N. E. 1058; People ex rel. Smith v. Schiellein, 95 N. Y. 124; Coll v. Board of Canvassers, 83 Mich. 367, 47 N. W. 227), while the right to determine the election and qualification of the relator, referred to in this section of the charter, was judicial (People ex rel. Hatzel v. Hall, 80 N. Y. 117). When it was determined that the relator had received a majority of the votes cast at that election for this office, it became the bounden duty of the canvassers to determine, declare, and certify his election, as in the cases of the other candidates named in the certificate.

But I am of opinion that the writ should run to the persons who composed the board of canvassers of the vote of 1904 as such. A complication arises from the accident that, although the application was made as against the individuals who acted as canvassers in 1904, while they were still in office as members of the common council, their terms of office as common councilmen expired at a time which intervened the application and the order, and therefore the writ was made to run against the successors of such individuals as common councilmen. This incident should not defeat the right of the relator to a proper certificate. I think that the law will regard these canvassers as not discharged from their duty sim-

ply because the terms of their office by virtue of which they became canvassers have expired before that duty was performed. It is plain enough that until they act in compliance with the law the law will not regard their work as done. Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81; People ex rel. Smith v. Schiellein, supra. What remains undone is but a further formal declaration which is the necessary sequence of the canvass made, and they may still be regarded as the canvassers for that purpose. Smith v. Lawrence (S. D.) 49 N. W. 7, is directly in point. The present common councilmen ex officiis are not the successors of the board of 1904 as canvassers of the vote of 1904. They are only a board of canvassers for the election of 1905. The duty cast upon the common council as canvassers of 1904 is not a continuous duty devolved upon the common council as canvassers of the vote of 1905, within the principle that a mere change of incumbent does not affect an obligation which attaches to the office itself. The act of canvassing such vote is not within the discharge of the duties of the common council as representing the municipality, but the charter has merely provided that these councilmen shall be canvassers, as it might have provided for a distinct set of election officials. The common council of 1905, as such, or as canvassers, are entire strangers to the procedure of the election of 1904, and one in no way qualified to complete the canvass of their predecessors. The principle that a mandamus does not run to an officer when not in office is not offended, if we regard the common councilmen as canvassers still in office as canvassers until they have performed the duty cast upon them by law. There is no positive provision of law, and no controlling principle, which requires that they cease to be canvassers, unable to discharge their plain duty, simply because their terms of office as common councilmen have expired meanwhile. We once were of mind to consider this question of ineligibility, for that was within our power (People ex rel. Hatzel v. Hall, supra), and also the constitutionality of the charter provision as to the qualification for the office; but we have concluded to go no further, for the reason that there is before us no determination save that which is a nullity because it was ultra vires, and therefore any discussion would not be in review, but in anticipation. Moreover, we have no reason to infer that the question will be raised before the present common council. Generally, the court should be loth to precede a deliberative body which is made by law the judge of the election and qualifications of its own members by its determination of that question, but should rather regard the power of the court as corrective.

For the reasons stated, the order must be reversed, with $10 costs and disbursements, but without prejudice to the relator. All concur.