(69 Misc. Rep. 568.)

## In re FRAME.

(Supreme Court, Special Term, Onondaga County. April, 1910.)

1. ELECTIONS (§ 238*)—DETERMINATION OF TIE.

Where two persons receive an equal number of votes for· the office of village president, and the board of trustees then in office fails to determine by lot which candidate shall be deemed elected, as required by Village Law (Consol. Laws, c. 64) § 53, such duty may be performed by the successors in office of such board, and the prior board need not be ordered to reassemble for such purpose.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 238.*]

2. ELECTIONS (§ 236*)—TIE VOTE—CONSTITUTIONAL LAW.

Village Law (Consol. Laws, c. 64) § 53, providing that, if two or more candidates at an annual village election receive an equal and the greatest number of votes for the same office, the board of trustees shall determine by lot which of them shall be deemed elected, is not violative of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Const. art. 10, § 2, requiring all village officers whose election or appointment is not provided for by the Constitution to be elected by the electors of such village or of some division thereof, or appointed by such authorities thereof as the Legislature shall designate.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 236.*]

Application made by Herbert J. Frame, a qualified elector of the village of Clayton, Jefferson county, N. Y., for a writ of peremptory mandamus to be issued to "Emery U. Steele, president, and George Fraser, Joseph Duford, George Kenyon, and G. William Brown, trustees, constituting the board of trustees of the village of Clayton, N. Y., at the time of the annual village election in March, 1910," requiring them to meet forthwith and proceed to determine by lot whether Frank P. Cole or Napoleon B. Bertrand shall be deemed to have been elected president of such village at the annual election held March 15, 1910. Denied.

L. H. Ford, for applicant.
John O'Leary, for respondents.

DE ANGELIS, J. It appears that the board of trustees of the village for the year ending March 21, 1910, at noon, were Emery U. Steele, president, and George Fraser, Joseph Duford, G. William Brown, and George Kenyon, trustees; that the annual election was held March 15, 1910; that at the election the electors of the village voted for candidates for the office of president and for candidates to succeed George Fraser and G. William Brown, as trustees; that J. Gordon Wilson and Henry Thibault were duly elected trustees to succeed George Fraser and G. William Brown; that three candidates were voted for for the office of president, namely, Frank P. Cole, Napoleon B. Bertrand, and George H. McKinley; that the canvass showed that Frank P. Cole and Napoleon B. Bertrand received an equal and the greater number of votes for such office; that the inspectors of election duly filed their certificate according to law showing that result; and that, prior to the expiration of the terms of office of Emery U. Steele as president and George Fraser and G. William Brown as trustees, the board of trustees failed to determine by lot which of the two persons, namely, Frank P. Cole and Napoleon B. Bertrand, should be deemed elected president.

The moving papers were not prepared and were not served prior to the expiration of the terms of the outgoing president and trustees, but the applicant has proceeded upon the theory that the old officers failed to perform their statutory duty, and that their official life survives sufficiently to enable the court to exact from them in this proceeding the performance of their neglected duty. This position is challenged by the opposing parties.

I gather from the papers that there was but one election district in the village. In that case the inspectors of election were the trustees as such—and not the board of trustees—the president as such, and the clerk of the village. Village Law (Consol. Laws, c. 64) § 51.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
127 N.Y.S.—48

Section 53 of the village law has the catch words, "Canvass of annual election," and is as follows:

"The inspectors of election of each election district shall, immediately upon the closing of the polls of each annual election, proceed to canvass the votes cast thereat, and shall complete such canvass without adjournment. They shall, before nine o'clock in the forenoon of the following day, file with the village clerk their certificate setting forth the holding of the election, the total number of votes cast for each office, the number of votes cast for each person for such office, the total number of votes cast upon each proposition voted upon, and the number cast for and against it. If the village contains more than one election district, the board of trustees of such village shall meet at its usual place of meeting, at nine o'clock in the forenoon of the next day after the election. The village clerk shall produce at such meeting the returns of the inspectors of election, and the board of trustees shall canvass such returns, and file in the office of the village clerk a certificate declaring the result. The person eligible and receiving the highest number of votes for an office shall be elected thereto. If two or more persons receive an equal and the greatest number of votes for the same office, the board of trustees shall determine by lot which of them shall be deemed elected."

Section 87 of the village law (Consol. Laws, c. 64) provides that the president and trustees of a village shall constitute "the board of trustees" thereof.

It will be seen from the foregoing that, where the village has but one election district, as in the case at bar, the completed canvass of the votes shall follow immediately the closing of the polls, and a certificate of such canvass shall be filed with the village clerk before 9 o'clock in the morning of the day following the day of election. I repeat "completed canvass," because it will be seen that the certificate shows the completion of the work of the canvass. Then the statute declares that the person eligible and receiving the highest number of votes for an office shall be elected thereto. Then there is the provision for a choice by lot to an office of one of two or more persons receiving an equal and the greatest number of votes for that office.

So that in the case at bar the canvassing board was made up of the president, trustees, and clerk, and their duties were completed. The provision for the determination by lot requires that action to be taken, not by the inspectors of election or board of convassers, but by the board of trustees alone. It is suggested that the board of trustees is a continuous body, and, as the old board in this case did not determine the person to be deemed president by lot, that duty should be performed by the board of trustees as now constituted. There is much force in this position, and no case cited determines anything to the contrary. The applicant, among others, cites the case of People ex rel. Robinson v. Burns, 106 App. Div. 36, 94 N. Y. Supp. 196, as an authority requiring the reconvening of the old board; but the conditions under consideration in that case were very different from those presented in this case.

If it were reasonably certain that the duty enjoined by the statute to make the determination by lot appertained to the office of the inspectors of election or board of convassers, as distinguished from the ordinary function of the board of trustees, there would then be room for the proposition that the failure to make the determination was a neglect of duty which, under the well-considered authorities upon that subject,

would authorize the court to require the reconvening of the old board and the performance by that board of one of the necessary functions for which it was established. People ex rel. Smith v. Schiellein, 95 N. Y. 124, 133. If there were no alternative but to reconvene the old board, the necessity arising from that situation under all the authorities would demand the granting of that relief. But clearly there is no such situation here.

Section 54 of the village law, the next section following that quoted above, offers an illustration of the view the Legislature took in trusting the new board of trustees to make the determination, even assuming that the function of the old board was so intimately associated with the function of the inspectors of election and the board of canvassers as to make the duty in the first instance that in the nature of canvassing, because in this next section the failure of the canvassing board to perform its duty devolves that duty upon the board of trustees and these are the words of the Legislature:

"If the votes shall not be so counted and canvassed the board of trustees shall, at least twenty days before the expiration of the shortest term, determine by lot which of such officers shall hold office for each term, and thereupon such officers shall be deemed to have been elected accordingly."

The interval between the date of the annual election and the time when the terms of the newly elected officers began (from Tuesday to the following Monday noon [Village Law, §§ 43, 52]) undoubtedly furnished the opportunity for the determination of this question by the old board, and undoubtedly the old board should have acted in the premises; but, as already stated, its failure left that duty to be discharged by the new board. There is nothing in the change in the personnel of the board that furnishes an argument for the position that the old board only could act in the premises. One board could cast a lot just as well as another. In this case under Public Officers Law (Consol. Laws, c. 47) art. 2, § 5, the old president holds over, and the change consists in the substitution of the two new trustees elected. There is no condition that can arise out of this construction of the law that would in any manner embarrass the execution of the election law of a village. Assume an extreme case, that all the members of the board of trustees were to be elected and a tie existed in the votes for every office, and in that case the members of the old board would hold over and would be the legally constituted board of trustees to execute the provisions of the law in question, after the Monday following the day of the election, if it failed to perform the duty before.

I see no reason why the present board of trustees should not act in the premises.

The respondents insist that the determination of the candidacy by lot is obnoxious to section 9 of article 1 and section 2 of article 10 of the Constitution.

While it is not necessary that I should express an opinion upon the subject in the view I take of the controversy, it may be proper for me to say that the Constitution does not seem to me to prohibit the choice of the successful candidate by lot.

The particular language of section 2 of article 10 of the Constitu-- tion which is said to be obnoxious to the choice by lot is as follows:

"All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some ..division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose."

This provision not only does not prohibit the proposed action, but, on the contrary, expressly permits it, because the Legislature has designated how the president of the village shall be appointed by the authorities of the village, to wit, by the action of the board of trustees of the village. As already shown, the Constitution required the electors of the village to choose its president, or that he should be appointed by such authorities of the village as the Legislature should designate for that purpose. The Legislature has said that, in the event of the failure of the electors to choose an officer in a certain instance, he should be chosen by the board of trustees by lot from a certain list of men, two or more, who have an equality of recommendation by the electors of the village, and thereby the requirements of the Constitution are fully met.

It seems to me that the suggestion that section 9 of article 1 of the Constitution, which is the provision against lotteries, poolselling, bookmaking, and other kinds of gambling, is violated by this legislative scheme, enabling the board of trustees of the village to select the president by lot, can hardly be serious. It is safeguarded in every way, because the selection is limited to persons whose qualifications have been certified to by the electors equally. That is understood by the electors when they vote, and the electors by their action determine the persons who shall be eligible and from whom the choice must be made.

But, for the reasons already stated, the present application must be denied.

Application denied.