The People of the State of New York ex rel. James A. Delehanty and James A. Delehanty, Appellants, *v.* John F. McIntyre, Respondent.

First Department, April 1, 1921.

**Elections — quo warranto to try title to office — proceedings to recount ballots — stipulation dispensing with preliminary proof as to condition of ballot boxes, etc., did not prevent introduction of evidence that ballot boxes or ballots had been tampered with — circumstantial evidence showing that ballots had been tampered with — charge, that if relator's witness mutilated ballot that fact might be considered, not improper — responsibility of plaintiff for acts of witness in mutilating ballot — admission by relator of weakness of case.**

A stipulation, entered into in a quo warranto action to try the title to an office, to the effect that each party waives preliminary proof as to the condition of the ballot boxes, envelopes and ballots preparatory to the

opening of any box or envelope, which expressly leaves either party at liberty to offer affirmative proof tending to show such material facts as to the condition of any boxes, envelopes or ballots as he may deem expedient, must be construed to mean that the preliminary proof, which it would have been incumbent upon the relator to make, concerning the actual custody and condition of each ballot box to enable it to be opened, was waived to expedite the trial.

The stipulation did not waive all questions of fact and leave only the rulings as a matter of law on the validity of the ballots which were alleged to be void, but there still remained the question of fact as to whether or not the ballot boxes or ballots had been illegally tampered with prior to their production in court.

While there was no direct proof that the boxes had been unlawfully opened, nor that the ballots had been fraudulently marked, or otherwise changed prior to their production in court, there was circumstantial evidence, from which the jury might fairly have inferred that the ballots were not in the same condition that they were in on election night, and the jury was warranted in drawing the conclusion from the evidence that the ballots produced in court had been tampered with.

It having been proven that one of relator's witnesses, a watcher, did actually mutilate a ballot in court, it was proper for the court to charge that, if the jury found that fact and that the mutilation was intentional and deliberate, then they might consider that fact as bearing upon the likelihood that the ballots had been tampered with between election and the recount in court.

And it was proper for the court to charge further that if either the relator or those who were acting in his behalf knew about said mutilation and consented to it in advance then the jury might treat that as an admission on the part of the relator of the weakness of his case and as an admission that he was disposed to bolster up his case improperly, but that neither the relator nor those acting for him could be charged with such admission if the act was done without any connivance or knowledge or approval by them.

APPEAL by the plaintiffs, The People of the State of New York and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of April, 1918, on the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of April, 1918, denying plaintiff's motion to set aside the verdict and for a new trial made upon the minutes.

*Charles E. Hughes* of counsel [*John T. Loughran, Leonard J. Obermeier* and *John W. Hannon* with him on the brief; *Charles D. Newton, Attorney-General*], for the appellants.

*Herbert R. Limburg* and *John Godfrey Saxe* of counsel [*Henry G. Seipp* with them on the brief; *John Godfrey Saxe* and *Benjamin F. Schreiber*, attorneys], for the respondent.

Page, J.:

This is a quo warranto action brought by the Attorney-General to try the title to the office of judge of the Court of General Sessions of the Peace for New York County.

At the general election held on November 7, 1916, James A. Delehanty was the candidate of the Republican party, and John F. McIntyre was the candidate of the Democratic party for said office. On the official canvass of the ballots it appeared that McIntyre had received 109,709 votes and Delehanty 108,893, thus showing a plurality for McIntyre of 816, and he accordingly received the certificate of election. Thereafter Delehanty obtained an order permitting an inspection of the ballots in the boxes and also of those inclosed in the envelopes and filed with the county clerk as void or protested. As a result of this inspection of the ballots this action was instituted. The result of the recount of the ballots in this proceeding was as follows: Delehanty 106,136, McIntyre 105,310, thus showing a plurality for Delehanty of 826.

The rulings of the court upon ballots which bore voting marks canceled by being marked over with a lead pencil or other erasures and defects, account very largely for the difference in the count, and no claim of error is made upon any of these rulings of the court. The sole issue, therefore, to be determined was whether the ballots produced for recount in this action were the identical ballots that were counted by the inspectors on election night and in the same condition as they then were. The court submitted this issue to the jury in a very fair, able and comprehensive charge to which no exception was taken by the relator that is urged on this appeal.

The appellant claims that by reason of a stipulation entered into by counsel at the beginning of the trial the inviolability of the boxes and of the ballots was conceded, unless met by direct proof of tampering with a particular box; and as such

direct proof was not adduced that a verdict should have been directed for the relator.   The stipulation reads as follows:

" We hereby stipulate as follows:

" 1. That on the trial of this action all the boxes and envelopes shall be opened, and all the voted ballots shall be recounted, and that so far as practicable the boxes and envelopes shall be opened by assembly districts in numerical order.

" 2. That each party waives preliminary proof as to the condition of the boxes, envelopes and ballots, preparatory to the opening of any box or envelope; but it is expressly agreed that either party shall be at liberty at any time on the trial to offer affirmative proof tending to show such material facts as to the condition of any boxes, envelopes, or ballots, or otherwise, as he may deem expedient."

In my opinion the effect of this stipulation is not as broad as contended by the appellant, but it means that the preliminary proof, which it would have been incumbent on the relator to make, concerning the actual custody and condition of each ballot box to enable it to be opened, was waived to expedite the trial.   The ballot boxes were then produced and all the ballots therein contained were marked in evidence. This stipulation did not waive all questions of fact and leave only the rulings as a matter of law on the validity of the ballots which were alleged to be void.   But as the learned justice stated in denying the motion for a new trial, had all the preliminary evidence been received and as a result thereof the boxes formally received in evidence, upon the evidence in the case there would still have been this question of fact which, from the circumstances proved would have had to be resolved by the jury.   This was a correct statement of the situation.   In *Matter of Metz* v. *Maddox* (189 N. Y. 460, 469) the court said:   " The proof given may tend to show that the box has been preserved inviolate and, therefore, justify the admission of its contents in evidence.   On the other hand, there may be evidence tending to show that the box was or could have been tampered with, and there may also be the testimony of the election inspectors and canvassers that on the night of the election the ballots in the box were exactly as returned by them in their statement of the count.

The vital issue will then be what was the true count of the ballots on election night, and the exclusive determination of that question will belong to a jury." Upon the evidence at the close of the trial the exact condition described in the above quotation existed. There was no direct proof that the boxes had been unlawfully opened, nor that the ballots had been fraudulently marked, or otherwise changed prior to their production in court. There was, however, circumstantial evidence, from which the jury might fairly infer that the ballots were not in the same condition that they were in on election night.

Without reviewing in detail the evidence, it may be summarized as follows:

1. The ballot boxes all had a similar lock, so that the keys would interchangeably unlock them, and there were a large number of these keys in possession of many different persons.

2. These boxes were kept in the station houses of the precincts in which the polling places were situated and not in the custody of the board of elections. The lock on the doors of the rooms was a lock common to all station houses and was known as the " police lock." The key to each room was kept either on a nail near the desk of the officer in charge or in a box upon the desk, and no one was allowed to take the key without permission of the lieutenant in charge. It was shown, however, that there were similar keys that would unlock the door in the possession of a large number of persons.

3. There had been three contests for seats in the Assembly and the boxes in these Assembly districts had been opened and the ballots handled by a number of different people.

4. There had been a contest over a seat in Congress which involved certain other election districts and the boxes in these districts had been opened and the ballots handled by a number of different people.

5. All the boxes had been opened and inspected prior to the bringing of this action and as a preliminary thereto, and the ballots handled by a number of different persons.

All of this tended to show opportunity but would have been of no avail unless some evidence was adduced tending

to show that use had been made of the opportunity. Such evidence was as follows:

a. The inspectors of election who canvassed the ballots on election night testified that the ballots in the box were actually as returned by them in their statement of the count.

b. In election districts where the ballots had been protested and marked by the inspectors, as required by law, thus tending to show the alertness of the watchers and the careful observance of the law by the inspectors, a number of McIntyre ballots were found similarly marked, in a most conspicuous manner, upon which no indorsement had been made, and which had been counted without protest.

c. In making the preliminary inspection of the ballots a careful record of each questionable ballot had been made and upon the trial there appeared other ballots with obvious marks of which the defendant's watchers had no record.

d. In one box were found ballots which showed that the stubs had been separated from them in pairs, as the torn edges exactly conformed to each other.

e. In another box were found unvoted ballots.

f. Upon the trial it was testified that one of the Delehanty watchers deliberately mutilated a ballot in the courtroom.

From these facts the jury were warranted in drawing the conclusion that the ballots produced in court had been tampered with. The jury not only found a verdict in favor of McIntyre but specifically found that " the ballots were not in the same condition as on the night of election."

The only exception taken to the charge to the jury related to the incident of the mutilation of a ballot in the courtroom by Jarecki, a Delehanty watcher. The appellant argues first that there was no evidence in the case on which the jury could find that Jarecki had actually mutilated any ballot. There was, however, the direct evidence of an eye witness that he saw Jarecki smudge a voting mark on a ballot with his wet thumb in the presence and with the apparent connivance of the relator's brother. The ballot was produced, exhibited to the judge, and was directed by him to be counted. Second, the appellant contends that even if such a finding could be made, it could not be made the basis for a further

First Department, April, 1921.        [Vol. 196

finding that Jarecki had committed further or different fraud-
ulent acts, citing in support of this latter proposition *People
ex rel. Judson* v. *Thacher* (55 N. Y. 525, 532). " The fact
that votes had been fraudulently taken from the box or table
would not alone justify the inference that a further or
different fraud had been committed." In the instant case the
question was not the removal of a ballot, but the mutilation
of documentary evidence in such manner as to destroy its
probative value. It was a fraud exactly similar to others
claimed to have been theretofore perpetrated, and by reason
of which the reversal of the result of the count on election
night had been accomplished. Jarecki admitted on cross-
examination that he had personally examined every ballot
in the Congressional contest, and in one of the Assembly con-
tests. He had abundant opportunity, therefore, to perpetrate
similar frauds. The learned justice correctly charged that if
the jury found that Jarecki did mutilate that ballot inten-
tionally and deliberately " then that fact is to be considered
by you in connection with all these other facts as bearing
upon the likelihood that these ballots have been tampered with
between election and recount here, because of course, while it
does not necessarily follow, yet it is human experience that a
person who has the disposition to do a wrongful thing once,
and carries it into effect, will do it again if he has a chance."
He further said that if they found Jarecki did mutilate the
ballot and should find circumstances surrounding the entire
transaction which led them to believe that either Judge
Delehanty or those who were acting in his behalf knew about
it and consented to it in advance, then they might treat it
as an admission on their part of the weakness of their case,
and as an admission that they were disposed to bolster up
their case improperly; but that neither Delehanty nor those
acting for him could be charged with such admission, " if it
was done without any connivance or knowledge or approval
by them." This part of the charge was a correct statement of
the law and of the inferences that the jury might draw from
the facts proved.

The appellants devote a good deal of space in their brief to
arguing an alleged fallacy in the charge, in that the court
charged the jury that the law presumed an official discharged

his duty. If there was error, the same charge as to the presumption that the election officers did their duty, which would favor the defendant, was made in regard to the officials having charge of the ballot boxes, which would favor the relator.

The appellants assume that the jury knew the difference, without being instructed, between a presumption of law, which is conclusive, and a presumption of fact, which may be rebutted. The court, however, charged that these presumptions would yield to proof to the contrary. Therefore, the criticism of the charge in this respect is unfounded. Furthermore, there was no exception taken to this charge or request for a further charge. If it had been called to the judge's attention that the charge was capable of such a construction, he would undoubtedly have corrected it.

The judgment and order should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Judgment and order affirmed, with costs.