THE PEOPLE OF THE STATE OF NEW YORK ex rel.
WILLIAM M. CHADBOURNE, Respondent, *v.* JOHN R.
VOORHIS et al., Constituting the Board of Elections of
the City of New York, et al., Appellants.

Election Law — qualifications of new voters — purpose and
effect of statute (Election Law, § 166, amd. L. 1923, ch. 809)
abolishing former tests of literacy by election boards and sub-
stituting therefor proofs of literacy by certificate issued under
rules of state board of regents as proof of literacy — construc-
tion of inconsistent statutes becoming law on same day —
determination of legislative intent — statute not affected by
provisions of chapters 803 and 810 of Laws of 1923 which are
inconsistent with the purpose of section 166 — constitution-
ality of section 166 upheld.

1. The amendment to section 166 of the Election Law by chapter
809 of the Laws of 1923 manifests the legislative intention to abolish
the alternative test of literacy to be conducted by the boards of
registration under the former section 166, and to substitute in place
thereof the proof of literacy by certificate as the sole and conclusive
evidence of the constitutional requirement. This purpose is not
affected by the provisions of chapters 803 and 810 of the' Laws of
1923. The statutes (L. 1923, ch. 803, and L. 1923, ch. 810) cannot be
read as consistent standing alone or in connection with the new sec-
tion 166. The first statute (Ch. 803) is meaningless. It is referable
only to the old section 166 and the 1923 amendment to that section
cut out all reference to a test by the inspectors as theretofore provided.
The second statute (Ch. 810) also assumes that tests still exist which
have been abolished and is inconsistent with the substantive provisions
of the new section 166. The three acts are not to be considered as
inconsistent if they can fairly be read otherwise. The fact that
statutes take effect on the same day is strong evidence that they were
intended to stand together if they can be reconciled, but it is not the
duty of the court to reconcile the irreconcilable nor to raise by
implication an inference to the dignity of a solemn pronouncement of
the legislature what is clearly attributable, not to deliberate intention,
but to inadvertence or carelessness. The facts connected with the
passage of such acts must be considered and the act which clearly
expresses the mind of the legislature concerning the common subject
to which they relate must be given controlling force. These statutes
cannot be harmonized with that section as it now stands except by
ignoring the clear purpose of the cardinal amendment therein contained.

# 438    PEOPLE EX REL. CHADBOURNE v. VOORHIS.

2. The statute (L. 1923, ch. 809, amending section 166 of the Election Law) which requires new voters to submit to an educational test, under the rules and regulations of the New York state board of regents, to determine their ability to read and write English, except for physical disability, and provides that a certificate to that effect shall be received by the election inspectors as conclusive of that fact, is a reasonable enactment under the Constitution (Const. art. 2, § 1, as amended in 1922).

3. The statute is not unconstitutional because it deprives the election inspectors of a power vested in them by the Constitution (Art. 2, § 6), in that it vests in those not charged with the duty of registering voters or distributing ballots and receiving votes the absolute power to make a determination, conclusive upon the election inspectors, of the possession by the new voter of the ability to read and write English. The Constitution contains no express or implied grant of general power to boards of election to determine for themselves the qualification of voters nor is implication of such power to be found therein. The legislature may adopt a reasonable method of ascertaining a qualifying fact, designed to secure uniformity and impartiality, so long as it does not add to the qualifications required of electors by the Constitution. The statute contemplates no extraordinary educational test. Literacy as therein used is defined as and means ability to read and write English; nothing more.

4. In enacting this statute the legislature has not delegated its powers improperly. The legislature cannot administer the tests to the voters. It must delegate the power elsewhere, and as well to the educational authorities of the state as to the inspectors of election. The law nowhere contemplates that the rules and regulations of the board of regents shall define what is meant by the ability to read and write English. Through its proper representatives, that board is to administer the law and determine the fact. It is to ascertain in each case whether the new voter has the constitutional qualification. If he comes under the precise terms of the Constitution nothing is left to the examiners but to furnish the necessary evidence of the fact. The rule against delegation of legislative power does not apply. The argument of inconvenience is not controlling.

5. In any event, if the law is within the reasonable range of legislative discretion it must be upheld because the Constitution expressly empowers and requires the legislature to pass suitable laws to enforce the provisions in question and thus contains a grant of the widest possible legislative power consistent with the amendment itself.

*Matter of Chadbourne* v. *Voorhis*, 206 App. Div. 374, affirmed.

(Argued October 15, 1923; decided October 16, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 9, 1923, which reversed as matter of law an order of Special Term denying a motion for a peremptory order of mandamus requiring the board of elections to refrain from conducting any literary test of new voters as provided for by the Election Law (L. 1922, ch. 588, § 166, subd. 1) and granted said motion.

*George P. Nicholson, Corporation Counsel* (*Russell Lord Tarbox* and *John F. O'Brien* of counsel), for appellants.

*Carl Sherman, Attorney-General* (*Edward G. Griffin* and *Charles E. McManus* of counsel), for appellants.   Chapters 803, 809 and 810 of the Laws of 1923 having been passed simultaneously at the same session of the legislature and approved the same day, must all be given effect and there can be no repeal of each other by implication. (*Powers* v. *Shepard,* 48 N. Y. 540; *Smith* v. *People,* 47 N. Y. 330; *Carroll* v. *McArdle,* 216 N. Y. 232; *People ex rel. Onondaga Savings Bank* v. *Butler,* 147 N. Y. 164; *People ex rel. Strough* v. *Canvassers,* 143 N. Y. 84; *People* v. *French,* 4 N. Y. Supp. 330; *Bank of Metropolis* v. *Faber,* 150 N. Y. 200; *White* v. *T. H. Co.,* 141 N. Y. 123; *Croveno* v. *Atlantic Avenue R. R. Co.,* 150 N. Y. 225; *Louisville* v. *Savings Bank,* 104 U. S. 469.)   The exclusive educational test found by the Appellate Division takes from the present constitutional bi-partisan election boards power of ascertaining by proper proof one of the qualifications of voters. (*People* v. *Fabian,* 142 N. Y. 443; *People* v. *Howland,* 155 N. Y. 270; *People ex rel. Stapleton* v. *Bell,* 119 N. Y. 175; *People* v. *Draper,* 15 N. Y. 532; *People* v. *Raymond,* 37 N. Y. 428; *People* v. *Albertson,* 55 N. Y. 50; *People* v. *Harrison,* 219 N. Y. 562; *Matter of Morgan,* 114 App. Div. 45; *Green* v. *Shumway,* 39 N. Y. 418.)   There is an unconstitutional delegation of power from the legislature to the regents, from the regents to the commissioner of education

and from the commissioner of education to local examiners who fix the time and give the test. (*Vil. of Saratoga* v. *Saratoga Gas Co.*, 191 N. Y. 123; *People* v. *Klinck Packing Co.*, 214 N. Y. 121.) The Steinberg bill by itself authorizes a proof and the education authorities have adopted a proof thereunder that is unreasonable and harassing, that is not subject to review, and is, therefore, unconstitutional as incumbering and impeding the right of franchise. (*Yick Wo* v. *Hopkins*, 118 U. S. 356; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Ohio Valley Co.* v. *Ben Avon Borough*, 253 U. S. 287; *Capen* v. *Foster*, 12 Pick. 485; *Kinneen* v. *Wills*, 144 Mass. 497; *Hill* v. *Howell*, 70 Wash. 603; *Page* v. *Allen*, 58, Penn. St. 338; *Wills* v. *Green*, 67 Fed. Rep. 818; *Green* v. *Shumway*, 38 N. Y. 418; *Atty.-Gen.* v. *City of Detroit*, 44 N. W. Rep. 388.)

*Louis Marshall, amicus curiæ.* The legislature had no power to add to or subtract from that part of article 2, section 1, of the State Constitution relating to a literacy test. (*Green* v. *Shumway*, 39 N. Y. 418; *Goetcheus* v. *Matthewson*, 61 N. Y. 420; *Matter of Ahern* v. *Elder*, 195 N. Y. 497.) Section 166 of the Election Law, as amended by chapter 809 of the Laws of 1923, by limiting the proof of literacy to a certificate issued under the rules and regulations of the board of regents, exceeded the authority conferred upon the legislature by the constitutional amendment, deprived the inspectors of election of their constitutional power, provided no proper standards, and constituted an unwarranted delegation of legislative authority. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144; *People* v. *Klinck Packing Co.*, 214 N. Y. 121; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *Collins* v. *Kentucky*, 234 U. S. 634; *American Seeding Machine Co.* v. *Kentucky*, 236 U. S. 660; *Standard C. & M. Co.* v. *Waugh Chem. Corp.*, 231 N. Y. 51.) The rules and regulations claimed to have been adopted by the board of

regents do not conform with the terms of the constitutional amendment of 1921, and are of such a nature and were promulgated at so late a day as to have made it physically impossible for the new voters to have brought themselves within their terms in time to be registered for the coming election. A large body of voters who could have complied with the act of 1923 will thus be disfranchised. Because of that fact the amendment of 1923 is unconstitutional. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Gilman* v. *Tucker*, 128 N. Y. 190; *Colon* v. *Lisk*, 153 N. Y. 194; *Justice* v. *Mende*, 162 Ky. 423; *Williams* v. *Hays*, 175 Ky. 170; *Hill* v. *Howell*, 70 Wash. 603.)

*Leonard M. Wallstein* for respondent. Chapter 809 of the Laws of 1923 is in accord with the Constitution as amended in 1921. (*Matter of Ahern* v. *Elder*, 195 N. Y. 493; *People* v. *Harrison*, 170 App. Div. 802; 219 N, Y. 562; *Doyle* v. *Town of Diana*, 203 App. Div. 239.)

POUND, J. Before January 1, 1922, article 2, section 1, of the State Constitution defined the qualifications of voters as to citizenship, age and residence. By amendment by vote of the people at the general election in 1921, these words were added:

"After January 1, 1922, no person shall become entitled to vote by attaining majority, by naturalization or otherwise, unless such person is also able, except for physical disability, to read and write English; and suitable laws shall be passed by the Legislature to enforce this provision."

The legislature of 1922 thereupon provided (Election Law, L. 1922, ch. 588, § 166) *first*, by subdivision 1 of section 166, for a test of the ability of the voter to read and write English, to be made by the inspectors of election, by the use of extracts from the Constitution of the state, and *secondly*, by subdivision 2 of section 166, as an alternative, proof of the ability of the voter to read

and write English to be made by a so-called school " certificate of literacy " which might, but need not, be accepted by the board of inspectors without the test provided for in subdivision 1.

In 1923 the legislature had before it a bill introduced by Assemblyman Steinberg, entitled "An act to amend the Election Law, *in relation to literacy tests of voters.*" It amended six sections of the Election Law with one evident purpose as expressed in the title. The new matter in the bill was printed in italics and the matter in the old law to be omitted was inclosed in brackets. In section 90, relating to the distribution of ballots and supplies, these words were omitted: " For a district where registration is not required to be personal, *card slips for literacy test shall* be delivered with the other supplies for a general election." In section 155, relative to method of registration in election districts, outside of cities and villages of five thousand inhabitants or more, words providing for a notation by the inspectors on the registers to examine new voters on election day not known to be able to read and write English were stricken out. In section .163 the words " test or " in the phrase " test or proof prescribed by section 166," of ability to read and write English were stricken out. The entire section 166 was stricken out and a new section was provided which required proof of ability to read and write English to be established exclusively and conclusively as follows:

" § 166.   Proof of literacy and regulations.   A certificate of literacy issued to a voter under the rules and regulations of the board of regents of the state of New York to the effect that the voter to whom it is issued is able to read and write English, or is able to read and write English save for physical disability only, and to the extent of such physical disability, which shall be stated in the certificate, shall be received by election inspectors as conclusive of such fact, except as hereinafter provided. But a new voter may present as evidence of literacy a

certificate or diploma showing that he has completed the work of an approved eighth grade elementary school or of a higher school in which English is the language of instruction.  But the genuineness of the certificate and the identity of the voter shall remain questions of fact to be established to the satisfaction of the election inspectors and subject to challenge, like any other fact relating to the qualification of a voter.  The inability of a voter, save for physical disability only, obvious to the election inspectors to write his name in a register or poll book, shall be deemed conclusive proof of inability to read and write English, notwithstanding the presentation of proof of literacy as herein provided.  Upon registering a voter after receiving proof of literacy, each inspector shall make a note upon his register in the registration remarks column, ' proof of literacy presented.' "

In section 207 reference to the test of literacy was omitted.

This bill passed both houses of the legislature and became law (L. 1923, ch. 809) by signature of the governor on May 28, 1923.  This statute, taken by itself, manifests in unmistakable terms the legislative intention to abolish the alternative test of literacy to be conducted by the boards of registration under the former section 166, and to substitute in place thereof the proof of literacy by certificate, as the sole and conclusive evidence of the constitutional requirement.  This much is conceded by all parties.  But the legislature in 1923 passed two other separate and disconnected bills amending the Election Law which were both signed by the governor and became law, along with the so-called Steinberg bill, on May 28, 1923, and it is argued that statutes taking effect at the same time, when similar in their nature and purpose, must if possible be construed together so that all will stand, and that the language of the two other statutes implies that the legislature did not intend to do away with the test of literacy which the board of registration was authorized to apply

under section 166, subdivision 2, as it read prior to its implied repeal by the inconsistent provisions of the new section 166, as contained in Laws of 1923, chapter 809. We must, therefore, first pass upon a question of mere statutory construction to ascertain if both methods of determining literacy remain in force.

First we have a bill which added to section 166 as it was originally enacted a subdivision 3 which provides: " Upon registering a voter after *administering such test* or receiving such proof, each inspector shall make a note upon his register in the registration remarks column ' Literacy test satisfactory ' or ' unsatisfactory ' as the case may be." This bill became chapter 803, Laws 1923.

Next we have a bill which is entitled "An act to amend the Election Law, in relation to envelopes for enrollment blanks in the city of New York." Its sole purpose as appears on its face is to do away with enrollment envelopes. But it retains a provision of the Election Law of 1922, which says: " The board of elections of the city of New York and elsewhere of each county shall provide  *  *  *  the necessary card slips of extracts from the State Constitution to be used for literacy tests." This bill became chapter 810 of the Laws of 1923.

The three acts are not to be construed as inconsistent if they can fairly be read otherwise. The fact that they took effect on the same day is strong evidence that they were intended to stand together (*Com.* v. *Huntley,* 156 Mass. 236, 239) if they can be reconciled, but it is not the duty of the court to reconcile the irreconcilable nor to raise by implication and inference to the dignity of a solemn pronouncement of the legislature what is clearly attributable, not to deliberate intention, but to inadvertence or carelessness. Standing alone or read in connection with the new section 166, chapter 803 is meaningless. It is referable only to the old section 166 and the amendments to section 166 deliberately cut out of

that section all reference to a test by the inspectors.   It cannot be harmonized with the new section except by ignoring the clear purpose of the cardinal amendment. In itself it provides for no test; it assumes that the test still exists when it no longer exists.   The words " administering such test " read in connection with the new section 166 are surplusage and must be rejected as such. So also chapter 810 merely assumes that the test still exists.   As appears by the title, the legislature had in mind a single purpose, *i. e.*, to do away with enrollment envelopes.   So far as it retains the provisions of the Election Law of 1922, relative to the cards to be used for tests, it is inconsistent with the substantive provisions of the new section 166.   Procedural in its character, it relates to tests which have been abolished.

The facts connected with the passage of these three acts must be considered and the act which clearly expresses the mind of the legislature concerning the common subject to which they relate must be given controlling force.   (*Lambert* v. *Bd. of Trustees*, 151 Ky. 725; Am. Cas. 1915A, 180.)   The common subject is the conduct of elections.   The mind of the legislature was not clouded.   Its purpose was to do away with the test of literacy by the inspectors and to substitute therefor the proof by certificate.   The court should not seize upon inconsequential slips in the use of words to defeat that purpose.   That which is of fundamental importance must control over minor inconsistencies.   No sanction remains for literacy tests of new voters to be conducted by the inspectors of election.

The constitutionality of the statute as thus construed is challenged.

It is urged that the legislature was powerless to provide for intelligence tests; that legislation providing a new test of ability to read and write English is the constitutional limit of suitability; that section 166 as it now reads requires or permits proof of literacy and that

literacy means a higher degree of education than mere ability to read and write English. But the statute contemplates no extraordinary educational test. Literacy as therein used is defined as and means ability to read and write English; nothing more.

It is further contended that section 166 deprives the election inspectors of a constitutional power vested in them under article 2, section 6, of the Constitution in that it vests in those not charged with the duty of registering voters or distributing ballots and receiving votes the absolute power and authority to make a determination, conclusive upon the election inspectors, of the possession by the new voter of the ability to read and write English. But the Constitution contains no express grant of general power to boards of election to determine for themselves the qualifications of voters nor is any implication of such power to be found therein. The purpose of article 2, section 6, is well understood. It is to guarantee equality of representation to the two majority political parties on all such boards and nothing more. The legislature may adopt a reasonable method of ascertaining a qualifying fact, designed to secure uniformity and impartiality. So long as it does not add to the qualifications required of electors by the Constitution the legislative will as to the evidence of such qualifications is supreme. (*People ex rel. Stapleton* v. *Bell,* 119 N. Y. 175.) Reasonableness is a matter of practical conditions and we cannot fail to recognize that a test of literacy applied by each election board for itself not only imposes a heavy burden on the board but also affords opportunities for haste, inequality, favoritism or indifference which the legislature may properly undertake to prevent or minimize. (*Matter of Ahern* v. *Elder,* 195 N. Y. 493.)

Nor can it be said that the legislature has delegated its powers improperly. It cannot be assumed that the examining authorities will impose unreasonable tests to ascertain the simple fact of ability to read and write

English. Their functions are ministerial. The suitableness of the tests is not before us. No individual who has been prejudiced thereby is asserting a right to be registered. If the tests imposed are unsuitable, the examiners are without jurisdiction. As well might it be argued that the ability understandingly to read extracts from the Constitution is not a suitable test. Many an intelligent reader of that which interests him in the newspapers could not understandingly read portions of the Constitution, yet the suitableness of such a test is not questioned.

The legislature cannot administer the tests to the voters. It must delegate the power elsewhere. As well to the educational authorities of the state as to the inspectors of election, it would seem.

The law nowhere contemplates that the rules and regulations of the board of regents shall define what is meant by the ability to read and write English. Through its proper representatives, that board is to administer the law and determine the fact. It is to ascertain in each case whether the new voter has the constitutional qualification. If he comes under the precise terms of the Constitution nothing is left to the examiners but to furnish the necessary evidence of the fact. The rule against delegation of legislative power does not apply. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121.) In any event, if the law is within the reasonable range of legislative discretion it must be upheld because the Constitution expressly empowers and requires the legislature to pass suitable laws to enforce the provisions in question and thus contains a grant of the widest possible legislative power consistent with the amendment itself.

The argument of inconvenience is not controlling. The requirement of personal registration is often an inconvenience, attended with expense, but the Constitution (Art. 2, § 4) for obvious reasons requires personal registration in cities and villages having five thousand inhabitants or more.

# 448                    MATTER OF BLUMENTHAL.

The order appealed from should be affirmed, without costs.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; HOGAN, J., dissents on ground that statute contravenes provisions of Constitution in that it deprives officers charged with registration of voters of power to determine qualifications of voters.

Order affirmed.