In the Matter of the Application of GEORGE W. HARRIS, Petitioner, for a Certiorari Order against MURRAY HULBERT, as President of the Board of Aldermen of the City of New York, and Others, Respondents.

First Department, January 9, 1925.

Elections — certiorari to review action of board of aldermen of New York city in recanvassing ballots cast for member of board — Greater New York charter, § 27, providing that board of aldermen shall be judge of election returns and qualifications of members subject to review by certiorari is constitutional — failure of respondents to establish inviolability of ballots waived by petitioner — no conspiracy shown as to marking ballots — objection to several classes of ballots considered and decided — certiorari sustained.

Section 27 of the Greater New York charter, so far as it provides that the board of aldermen of the city of New York shall be the judge of election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction, is not unconstitutional on the ground that it violates section 6 of article 2 of the State Constitution providing for the equal representation of two political parties on all boards charged with the

duty of counting votes, or on the ground that it provides for a proceeding similar to quo warranto, but without a jury trial, to try the title to an office. The objection by the petitioner that no evidence was offered to establish the inviolability of the ballots recanvassed by the board of aldermen cannot be sustained since that point was never raised in any form and both parties allowed the committee of the board of aldermen to proceed with its recanvass without suggesting, either before, during or after the same, that there was any question of inviolability of the ballots, or suggesting that proof should be made thereof.

A careful examination of all the ballots involved furnishes no basis whatever for the contention by the candidate who was successful on the recanvass that there existed a conspiracy to mark the ballots with marks other than cross marks in the voting places for the purpose of identifying the same, thereby making such ballots so marked absolutely void.

Under the Election Law, as it existed when the election involved in this case was held, a ballot was not made void as to a member of the board of aldermen by an erasure or irregular mark within a voting space other than that for a member of the board of aldermen.

The Appellate Division after an examination of objections to several classes of ballots determines that the result of the recount by the board of aldermen, which was that the petitioner was defeated at the polls, was erroneous, that the petitioner was duly elected at the polls and that, therefore, the order of certiorari should be sustained.

CERTIORARI ORDER granted out of the Supreme Court at the New York Special Term on the 17th day of July, 1923, directed to the Board of Aldermen of the City of New York, commanding it to certify and return to the office of the clerk of the county of New York all and singular its proceedings had in recanvassing the ballots cast for member of the board of aldermen from the twenty-first aldermanic district at the general election held in 1921.

*Abraham Brekstone,* for the petitioner.

*George P. Nicholson, Corporation Counsel [Henry J. Shields* of counsel; *John F. O'Brien* and *Charles Horowitz* with him on the brief], for the respondents Board of Aldermen and others.

*Snitkin & Goodman [Abraham Goodman* of counsel], for the respondent John W. Smith

DOWLING, J.:

This is a proceeding in certiorari to review the action of the board of aldermen of the city of New York, who, on the 6th day of July, 1923, adopted a report of its committee on privileges and elections and decided and declared John W. Smith, respondent, to have been elected member of the board of aldermen from the twenty-first aldermanic district of the city of New York, at the general election which was held on the 8th day of November, 1921, in the place and stead of George W. Harris, petitioner, to whom had

heretofore been granted a certificate of election as alderman of the twenty-first aldermanic district, borough of Manhattan, city of New York, as a result of the aforesaid general election.

At the general election on the 8th day of November, 1921, the petitioner Harris was the candidate of the Republican party, and the respondent Smith was the candidate of the Democratic party, for member of the board of aldermen of the city of New York from said district. The petitioner herein received a plurality of the votes cast for said office, on the face of the returns receiving 5,984 votes as against 5,906 votes cast for the respondent Smith; and after the official returns were canvassed, a certificate of election was issued to the petitioner certifying that he was the duly elected member of the board of aldermen from the said twenty-first aldermanic district, pursuant to which he took his seat as a member of the said board of aldermen.

At the opening meeting of the said board in January, 1922, the respondent Smith filed a notice of contest with the said board, and the matter was referred to the committee on privileges and elections. The petitioner filed an answer to said notice of contest and a number of hearings were thereafter held before the said committee, which finally made its report to said board on July 6, 1923, declaring that said Smith had been elected by a plurality of forty-six votes over the petitioner, which report was adopted on the same day by a majority of the said board of aldermen, who at the same time passed a resolution unseating the petitioner Harris and seating the respondent Smith in his place and stead.

It appears that the sessions of the said committee on privileges and elections were taken up by a re-examination of all the ballots cast in the said twenty-first aldermanic district at the regular election held on November 8, 1921, which were opened by the committee and counted. The work was done by election districts and counsel on both sides conceded the number of votes found in the ballot boxes and in the envelopes containing the void, protested and wholly blank ballots; and as a result of this concession and recount found 6,003 votes for the petitioner Harris, and 5,892 votes for the respondent Smith, an apparent majority for the petitioner Harris of 111.

Of this number counsel for both sides protested a number of ballots which were marked and given exhibit numbers, which exhibits were placed in envelopes, sealed by the aldermanic committee and placed in the custody of the board of elections. There were 2,373 such exhibits; after which the said committee went into executive sessions, examined said ballots marked as exhibits and passed upon the protests of counsel, and at the conclusion of the

said executive sessions declared that 389 of said ballots were void and should not be counted for any candidate.

The petitioner contends that of the 389 ballots so declared void by the committee, 104 ballots only should have been declared void as follows: 42 ballots marked for Harris and 62 ballots marked for Smith. The result of the recount should, therefore, have been, after deducting the 42 void ballots from the 6,003 as found for Harris, 5,961 good votes for Harris; and after deducting the 62 void ballots from the 5,892 as found for Smith, 5,830 good votes for Smith, which would give the petitioner Harris a majority of 131.

The respondents contend that the conclusion reached by the aldermanic committee was proper, and that a correct result was reached by the recount, viz., 5,776 votes for Smith and 5,730 votes for Harris, giving Smith a majority of 46.

At the outset certain legal objections are raised by the petitioner. The first of these is that the provision of the Greater New York charter that the board of aldermen shall be the judge of the election returns of its own members, is repugnant to the Constitution of the State of New York. This objection is based upon the grounds: (a) That all boards of officers charged with the duty of counting votes must be so constituted as to secure equal representation of the two political parties casting the highest and next highest number of votes at the preceding general election (State Const. art. 2, § 6); and that the board of aldermen by whom the recanvass herein has been made is not a bi-partisan body; (b) that the charter provision making the board of aldermen the judges of the election returns of its own members is unconstitutional in that it provides for a proceeding similar to quo warranto but without a jury trial to try the title to an office.

Section 27 of the Greater New York charter (Laws of 1901, chap. 466), so far as it is relevant to this proceeding, reads as follows: " The board of aldermen * * * shall be the judge of the election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction."

In *People ex rel. Hatzel* v. *Hall* (80 N. Y. 117) it was held that the provision of the charter of the city of New York of 1873 (Laws of 1873, chap. 335, § 6), making the board of aldermen " the judge of the election returns and qualification of its own members, subject, however, to the review of any court of competent jurisdiction," did not oust the court of jurisdiction, or prevent them from originating an inquiry as to the right to that office; and that the provision simply created a cumulative jurisdiction, by the exercise of which the board is for the time constituted a legal body and its acts are made authoritative, leaving to courts of competent jurisdiction

the right to inquire, in behalf of the people, into the right of any person who, by action of the board, holds a place on it.

In *People ex rel. Krulish* v. *Fornes* (175 N. Y. 114) the Court of Appeals had before it section 27 of the Greater New York charter, as above quoted. Judge CULLEN there said (p. 117): " The provision that a legislative body shall be ' the judge of the election returns and qualifications of its members ' is of such general enactment in constitutions and statutes in this country that its construction does not fairly admit of dispute. It is found in the Federal Constitution,* in that of this State and in those of at least twelve other States, not only in the very same words but in the same sequence of words, ' the election(s) returns and qualifications ' of its members. In about one-half of these cases the word is in the singular, ' election,' and in about the same number there is no punctuation mark between the words ' election ' and ' returns.' Under this authority each house of Congress and each branch of the State Legislature has exercised the most plenary power to determine who has been elected members of the body. Indeed, it has been generally assumed by publicists and writers on constitutional law that the absolute right of determining the election of its members is a power necessary to the independence of the legislative branch of the government. While, of course, this consideration does not apply to a municipal corporation, still it has been a very common (though not universal) practice to confer upon the boards of aldermen of municipalities or their legislative assemblies the same power on the subject as that possessed by the Legislature. There is this distinction between the two. The action or determination of a house of the Legislature is final, while that of a municipal assembly or chamber is subject to review by the courts even without express declaration to that effect unless it has been enacted in the charter to the contrary. This practice has prevailed in this State in the enactment of the charters of the cities. In that of the former city of Brooklyn it was enacted that the common council should be ' The sole judge of the qualifications, elections, and returns of its members.'† This language would seem to admit of no question. In the general act for the government of cities of the second class (Chapter 182, Laws of 1898) by section 17 it is enacted the common council shall be ' the judge of the elections, returns and qualifications of its members.' Here we find ' elections ' in the plural followed by the comma. The construction of this language also seems very

* See U. S. Const. art. 1, § 5, subd. 1.— [REP.
† See Laws of 1888, chap. 583, tit. 2, § 8.— [REP.

clear. In fact, we may say that the expression ' election returns and qualifications ' has so well defined and settled a meaning in American jurisprudence that its construction cannot be varied by the presence or absence of punctuation marks or by the use of the words either in the singular or in the plural. The board of aldermen had, therefore, full power to determine who was legally elected to the office, the relator or the respondent."

In *People ex rel. Colne* v. *Smith* (188 App. Div. 834) Mr. Justice LAUGHLIN said: " Section 27 of the Greater New York Charter (Laws of 1901, chap. 466) provides as follows: ' The board of aldermen shall determine the rules of its own proceedings; shall be the judge of the election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction.' And formerly the statute did not limit the review to certiorari (See Laws of 1897, chap. 378, § 27; Laws of 1882, chap. 410, § 71; Laws of 1873, chap. 335, § 6). It has been held that these statutory provisions authorize the board of aldermen to determine any contest over the election of a member and to go behind certified statements returned by the inspectors by which, as a board of canvassers, it was bound, and to recanvass the ballots and determine any question relating to the validity of the election. (*People ex rel. Krulish* v. *Fornes,* 175 N. Y. 114; *People ex rel. Hatzel* v. *Hall,* 80 id. 117)."

As to petitioner's contention that all counting of votes must be done by a bi-partisan board, it is answered by the language used by Judge POUND in *People ex rel. Chadbourne* v. *Voorhis* (236 N. Y. 437) involving the right of the State Board of Regents to issue to voters certificates of literacy instead of the former tests therefor by election boards. At page 446 he said: " It is further contended that section 166* deprives the election inspectors of a constitutional power vested in them under article 2, section 6, of the Constitution in that it vests in those not charged with the duty of registering voters or distributing ballots and receiving votes the absolute power and authority to make a determination, conclusive upon the election inspectors, of the possession by the new voter of the ability to read and write English. But the Constitution contains no express grant of general power to boards of election to determine for themselves the qualifications of votes nor is any implication of such power to be found therein. The purpose of article 2, section 6, is well understood. It is to guarantee equality of representation to the two majority political parties on all such boards and nothing more."

---

* See Election Law of 1922, § 166, as amd. by Laws of 1923, chap. 809.— JREP.

It follows from the opinions cited that section 27 of the Greater New York charter, in so far as it confers power upon the board of aldermen to judge of the election returns and qualifications of its own members, is valid and constitutional.

The second objection advanced is that there was no evidence offered to establish the inviolability of the ballots. It is sufficient to say in reply to this that at no time was there ever raised before the board of aldermen or its committee such an objection, nor was it ever suggested that the inviolability of the ballots was questioned. Had the issue been presented by appropriate objections by the petitioner, it would have been incumbent on the contestant to make preliminary proof concerning the actual custody and condition of each ballot box, to enable it to be opened. (*People ex rel. Delehanty* v. *McIntyre,* 196 App. Div. 44.) But in that case there was a written stipulation made which, while waiving preliminary proof as to the condition of the boxes, envelopes and ballots, preliminary to the opening of any box or envelope, showed that there would be an issue of fact contested as to such condition, since it was thereby expressly agreed that either party might at any time on the trial offer affirmative proof of the actual condition of such boxes, envelopes or ballots. Such proof was in fact offered, and the issue of fact created thereby was submitted to the jury. In the proceeding now before us it has never been suggested at any time until this argument that there was any issue as to the inviolability of the ballots. Petitioner did not at any time object to the procedure followed by the board of aldermen and never even hinted at his desire to put the contestant to his proof as to the condition of the ballots. There is even in petitioner's brief no suggestion that the ballots have been tampered with, or that they are not now in the same condition as when deposited in the ballot box by the voter. His suggestion is that the contestant should have made preliminary proof of their condition. But the point was never raised in any form and both parties allowed the committee of the board of aldermen to proceed with its recanvass, without suggesting either before, during, or after the same that there was any question of the inviolability of the ballots, or suggesting that proof should be made thereof. Both parties treated the ballots as those actually cast, in the same condition, and recognized that the question was one solely of the legality of the ballots in their then state. " It is well settled by authority that a man may waive any right that he has, whether secured to him by contract, conferred upon him by statute or guaranteed him by the Constitution." (*People ex rel. McLaughlin* v. *Police Commissioners,* 174 N. Y. 450, 456.) Both parties to this contest must be deemed so to have waived, and to

have acquiesced in the action being taken by the committee and the board, based on the ballots in the state in which they were then found.

We are thus brought to the question of whether the action taken by the board of aldermen upon the report of its committee on privileges and elections, in seating the contestant, was lawful and justified upon the proof.   There were nearly 12,000 ballots involved in the original recanvass, and of these 2,373 were protested and objected to by one party or the other.   Petitioner now questions the action of the committee in declaring invalid 231 ballots cast for petitioner, and 54 ballots cast for contestant; and if he is right in his contentions, the result would be to give petitioner a total of 5,961 votes and contestant a total of 5,830 votes, thus electing petitioner by a majority of 131.

At the outset we are met by the contention strenuously urged by the respondent Smith herein, that " a definite conspiracy existed to mark the ballots with marks other than cross-marks in the voting spaces for the purpose of definitely identifying the same, thereby making such ballots so marked absolutely void."   With reference to this it is sufficient to say that a careful examination of all the ballots involved in this controversy furnishes no basis whatever for such a charge, and it, therefore, must be disregarded.

Each of the ballots in dispute has been separately examined, and the conclusion reached will be announced with reference to each of the classes of ballots as to which questions are involved, taking them up in order as they are set forth in the brief of the learned counsel for the petitioner herein, which will be the most expeditious and satisfactory way of disposing of them.

In point III is raised the question as to the validity of ninety-one ballots where an erasure or irregular mark appeared within a voting space other than that of the group affected, namely, aldermen.   Of these sixty-three were cast for Harris, twenty-eight for Smith.   Section 358 of the Election Law of 1909 (as amd. by Laws of 1918, chap. 323),* as it existed when this election was held, provided: "Any mark other than a cross × mark or any erasure of any kind shall make the whole ballot void except that when such mark or erasure is made in a voting square it shall make the ballot blank only as to the office or question in which such mark or erasure occurs; but no ballot shall be declared void or partially blank because a cross × mark thereon is irregular in form."   A minute examination of the ballots involved in this point leads me to the conclusion that but two of them should properly be held to be void, namely, exhibit

---

* Now Election Law of 1922, § 219, rule 1.— [REP.

No. 1409 cast for Smith, and exhibit No. 2271 cast for Harris. Two of the exhibits are not with the ballots delivered to the court by the board of elections, namely, exhibits No. 80 and No. 81 cast for Harris. Thus there is added to the total vote for Harris, sixty, and to that for Smith, twenty-seven.

In point IV is involved the validity of one hundred and ten votes where double lines, extra lines or accidental dots or pencil lines appear upon the ballots; of these eighty-nine were cast for Harris, twenty-one for Smith. Examination of these ballots satisfies me that they are all valid with the exception of the following: Exhibit 174, cast for Harris; 492, cast for Smith; 552, cast for Smith; 887, cast for Harris; 1089, cast for Harris; 1224 and 1226, cast for Smith; 1246 and 1265, cast for Harris; 1328 and 1398, cast for Harris; 1680, cast for Smith; 1750, cast for Harris; and 1963, cast for Smith. Exhibits 1018, cast for Harris, and 1409, cast for Smith, had already been included in point III, where 1018 was declared valid, and 1409 void. This leaves a total of eighty valid votes to be added to Harris' total, and fourteen to Smith's.

Point V deals with an aggregate of eight ballots (all cast for Harris) which it is claimed contain impressions from the voting marks on other ballots, and should, therefore, be held good. I am satisfied upon examination that five of these ballots have erasures made before the marks thereon were made and that only three should be counted for Harris, namely, exhibits 52, 66 and 1422, thus adding three to his total.

Point VI has to do with ten ballots (nine for Harris, one for Smith) containing a stain or ink mark, which, it is claimed, might have been made by the inspectors. I find that this contention is correct, except as to exhibit 49, cast for Smith, and exhibits 1420 and 1611, cast for Harris, which show evidences of erasures; thus adding seven votes to Harris' total, and none to Smith's.

Point VII has to do with four torn ballots (three for Harris, one for Smith), as to which there is no presumption that they were torn by the voter since they might equally well have been torn by the inspectors in putting them in the boxes. There are four ballots involved in this question, and I find that three votes should be added to Harris' total, and one to Smith's.

Point VIII has to do with irregular attempts at making a cross mark within the voting space. There are four ballots involved in this question (three for Harris, one for Smith), and the only one which I find to be valid is exhibit 2276, which should be counted for Smith.

Point IX has to do with forty-eight ballots (forty-four for Harris, four for Smith) in which evidently by accident a slight departure

was made from the straight line or mark within the square, the pencil not having been kept exactly on the line at parts removed from the point where the lines cross. This was held not to invalidate the ballot in *Matter of Fallon* (197 N. Y. 336). I find that exhibits 794 and 876, cast for Harris, are void. Exhibit 173 had already been allowed to Harris under point IV. I find, therefore, that forty-one votes should be added to the total for Harris, and four to that for Smith.

Point X has to do with twelve ballots (all cast for Harris) rejected for no assigned cause, and I find that these should be added to Harris' total, with the exception of exhibit 1673 already counted for Harris under point VI, making eleven additional votes for Harris.

The summary of the conclusions thus reached is as follows:

|  | Harris | Smith |
|---|---|---|
| Vote as canvassed by the board of aldermen.... | 5,730 | 5,776 |
| To be added, under Point 3.................. | 60 | 27 |
| To be added, under Point 4.................. | 80 | 14 |
| To be added, under Point 5.................. | 3 | 0 |
| To be added, under Point 6.................. | 7 | 0 |
| To be added, under Point 7.................. | 3 | 1 |
| To be added, under Point 8.................. | 0 | 1 |
| To be added, under Point 9.................. | 41 | 4 |
| To be added, under Point 10................. | 11 | 0 |
|  | 5,935 | 5,823 |

Making a majority for Harris of 112.

The order of certiorari should, therefore, be sustained and the relator George W. Harris declared to have been duly elected alderman for the twenty-first aldermanic district in the city of New York at the general election held in November, 1921, and the respondent John William Smith to have been seated unlawfully.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order of certiorari sustained and petitioner declared to have been duly elected alderman for the twenty-first aldermanic district in the city of New York at the general election held in November, 1921, and respondent John William Smith to have been seated unlawfully. Settle order on notice.